Opinion issued April 27, 2006












     





In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00075-CV




IN RE MHCB (USA) LEASING & FINANCE CORP. 
AND VALERO REFINING-TEXAS, L.P., Relators




Original Proceeding on Petition for Writ of Mandamus 




MEMORANDUM OPINION

           This is a dispute over the valuation of property for ad valorem taxation. 
Relators, MHCB (USA) Leasing & Finance Corp. (“MHCB”) and Valero Refining-Texas, L.P. (collectively “Valero”), sue real parties in interest, Galveston Central
Appraisal District and Galveston Central Appraisal Review Board (collectively
“GCAD”), alleging that a delayed coking unit (“the Coker Unit”)


 at Valero’s refinery
had been unequally appraised for the 2004 tax year because GCAD’s appraised value
exceeds “the median appraised value of a reasonable number of comparable
properties appropriately adjusted,” pursuant to Texas Tax Code section 42.26(a)(3).


 
MHCB provided the financing for the Coker Unit. Under the financing structure,
MCHB owns the Coker Unit and Valero is a lessee.
          Valero seeks mandamus relief from the trial court’s December 14, 2005 order
compelling Valero to answer discovery that Valero contends is irrelevant, duplicative,
and overly burdensome.


 We conclude that (1) the trial court did not abuse its
discretion in ordering discovery relating to the market value of the Coker Unit; but
(2) the requests at issue are not narrowly tailored to seek such information and thus
are overly broad and unduly burdensome, under In re American Optical Corp., 988
S.W.2d 711 (Tex. 1998). We therefore conditionally grant mandamus relief.
 
 
BACKGROUND
A.      The Underlying Suit
          In 2004, GCAD appraised the market value of the Coker Unit at Valero’s Texas
City refinery for the purpose of assessing 2004 ad valorem property taxes in
Galveston County. GCAD appraised the Coker Unit at $240 million, in part based
on its $275 million construction cost, statements by Valero in press releases that the
expected net profits from product sold from the unit would be $105 million, and
Valero’s alleged “realized benefit” of $200 million in 2004. 
          Valero contends that the properly equalized value of the Coker Unit is $38
million.


 Valero further contends that GCAD’s appraised value of the Coker Unit
exceeds the appraised value required by law for 2004, pursuant to Tax Code section
42.26(a)(3)


 because GCAD erroneously appraised the Coker Unit unequally to other
properties of the same general kind and character. Valero seeks (1) an order declaring
the appraisal void; (2) alternatively, “an order fixing . . . the value of the property at
an appraised value that is equal and uniform as required by the law”; (3) alternatively,
a mandatory injunction compelling GCAD to correct the 2004 appraisal rolls; and (4)
attorney’s fees and costs. 
 
B.      The Discovery Issues 
          GCAD served Valero with sixty-eight interrogatories and ninety-eight requests
for production. Generally here, and in more detail below, GCAD requested
documents reflecting: (1) appraisals of the Coker Unit and the refinery; (2)
authorizations for expenditures; (3) cost-benefit and economic analyses; (4) press
releases discussing the property; (5) financing agreements; (6) unit plans and
specifications; (7) costs to construct and capital expenditures; (8) information about
other coker units constructed by Valero; (9) permits stating operational parameters
and inspections; (10) general expenditures; (11) insurance policies; (12) operating
manuals; (13) engagement agreements with Valero’s counsel; and (14) documentation
of values of properties that Valero considers comparable. 
          Valero agreed to provide 
aerial photos (if any), specification documents of the Coker Unit
containing all significant specifications, including capacity, operating
pressure, feed type, product yield and configuration, the general
description of the control system, the general plot plan of the refinery
and the Coker Unit, the basic drawings or blueprints of the Coker Unit,
AFE’s (with economic benefit analysis redacted), documents relating to
the direct costs of construction, permits relating directly to the
characteristics and specifications of the Coker Unit and inspection
documents relating directly to the characteristics and specifications of
the Coker Unit. 
 
Valero objected to the balance of the discovery as overly broad because it seeks
information that (1) is not relevant to the subject matter of the suit or to a section
42.26(a)(3) claim; (2) is duplicative; or (3) is overly burdensome to produce. GCAD
moved to compel Valero to answer. On December 14, 2005, after two hearings, the
trial court overruled a substantial number of Valero’s objections and granted GCAD’s
motion. It is from this order that Valero seeks mandamus relief.



STANDARD OF REVIEW
          A party is entitled to mandamus relief if a trial court violates a legal duty or
abuses its discretion and the party has no adequate remedy by appeal. Walker v.
Packer, 827 S.W.2d 833, 839–40 (Tex. 1992); In re Taylor, 113 S.W.3d 385, 392
(Tex. App.—Houston [1st Dist.] 2003, orig. proceeding). A trial court abuses its
discretion if “it reaches a decision so arbitrary and unreasonable as to amount to a
clear and prejudicial error of law.” Walker, 827 S.W.2d at 839; see In re Taylor, 113
S.W.3d at 389. With respect to factual issues, matters are committed to the trial
court’s discretion and the reviewing court may not substitute its judgment for that of
the trial court. Walker, 827 S.W.2d at 839. The relator must establish that the trial
court reasonably could have reached only one decision. Id. at 840. With respect to 
legal principles, review is less deferential, and the trial court has no discretion to
determine what the law is or how to apply the law. Id. In the context of discovery,
the trial court abuses its discretion if it requires production not limited to matters
relevant to resolving the case. Texaco, Inc. v. Sanderson, 898 S.W.2d 813, 815 (Tex.
1995). An order compelling discovery that exceeds the proper bounds is subject to
mandamus review. In re Am. Optical Corp., 988 S.W.2d at 714.
ANALYSISValero contends that information concerning the market value of the Coker
Unit is not discoverable and, even if it is discoverable, GCAD’s requests are overly
broad and unduly burdensome.
A.      Market Value
          In the underlying suit, Valero does not claim that the Coker Unit was appraised
in excess of its market value. Rather, Valero contends that the Coker Unit was
appraised unequally to comparable properties and that it is entitled to relief as
provided by section 42.26(a)(3) of the Tax Code. See Tex. Tax Code Ann.
§.42.26(a)(3) (Vernon 2005).


 The issue before this court is whether GCAD’s
discovery requests are beyond the scope of a claim for unequal taxation under section
42.26(a)(3). See id. Valero contends they are, because GCAD seeks to discover
information about the market value of the Coker Unit, evidence that, in its view, is
not relevant to a determination of whether GCAD has appraised the unit unequally.
          Section 42.26(a)(3) provides that “[t]he district court shall grant relief on the
ground that a property is appraised unequally if: . . . the appraised value of the
property exceeds the median appraised value of a reasonable number of comparable
properties appropriately adjusted.” Id. The “‘appraised value’ means the value as
determined by Chapter 23 of this code.” See id. § 1.04(8) (Vernon Supp. 2005). 
Chapter 23 provides that, “[e]xcept as otherwise provided by this chapter, all taxable
property is appraised at its market value as of January 1.” Id. § 23.01(a) (Vernon
2001). Further, 
[t]he market value shall be determined by the application of generally
accepted appraisal methods and techniques. . . . The same or similar
appraisal methods and techniques shall be used in appraising the same
or similar kinds of property. However, each property shall be appraised
based upon the individual characteristics that affect the property’s
market value.
 
Id. § 23.01(b). 
          Next, to determine if “the appraised value of the property exceeds the median
appraised value of a reasonable number of comparable properties appropriately
adjusted” under section 42.26(a)(3), “the appraisal expert determines a reasonable
number of comparable properties. Then, the expert takes the appraised value of those
properties from the public record, and appropriately adjusts them to the subject
property.” Weingarten Realty Investors v. Harris County Appraisal Dist., 93 S.W.3d
280, 286 (Tex. App.—Houston 14th Dist.] 2002, no pet.) (examining application of
former section 42.26(d), now found at section 42.26(a)(3)).


 The comparable
properties are adjusted according to factors that tend to influence value, such as
location, age, depreciation, physical characteristics of the property, and “economic
factors.” See Harris County Appraisal Dist. v. United Investors Realty Trust, 47
S.W.3d 648, 650 n.4 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); see also
Harris County Appraisal Dist. v. Kempwood Plaza Ltd., 186 S.W.3d 155, 160–61
(Tex. App.—Houston [1st Dist.] 2006, no pet.). Then, “the appropriately adjusted
comparable properties are arrayed and a median is determined.” Weingarten, 93
S.W.3d at 286.
          Thus, “appraised value” for both the subject and comparable properties hinges
to an extent on their relative “market value.” Id. at 287; United Investors, 47 S.W.3d
at 654; see Parker County v. Spindletop Oil & Gas Co., 628 S.W.2d 765, 767 (Tex.
1982) (explaining that article VIII of the Texas Constitution requires “that assessed
valuations be equal and be based upon reasonable cash market value”). An
assessment of appraised value of the Coker Unit under section 42.26(a)(3) is an
assessment of its market value. See Tex. Tax Code Ann. §§ 23.01(a), 42.26(a)(3). 
Moreover, the appraisal determinations of the reasonably comparable properties also
are based on market value. Finally, all of these properties are adjusted according to
factors that influence their value. 
          Section 42.26(a)(3) does not delineate what specific considerations are relevant
for adjustment. In United Investors, the parties relied upon values of comparable
properties taken from the appraisal district’s tax rolls, but made adjustments for
location, traffic volume, access, age, and depreciation. 47 S.W.3d at 650 n.4. Our
sister court held that section 42.26(d) dispenses with the need for an independent
appraisal of comparable properties and does not mandate consideration of market
value. In Weingarten, the owner’s expert witness attempted to rely on comparable
properties that were significantly smaller than the subject property and made
adjustments based on condition, age, size, and location—adjustments that can be
reflected by both a property’s appraised and market value were admissible. 93
S.W.3d at 282. The appraisal district argued that the expert had failed to consider
important differences in the economic characteristics of the subject property and the
comparables. Id. The trial court excluded the owner’s expert witness testimony. Id.
at 283. The court of appeals affirmed, holding that the trial court properly excluded
the expert testimony because of the disparity in the “quality” (or value) of the
comparable properties. Id. 
          Applying United Investors and Weingarten here, we conclude that information
regarding both the appraised and the market value of comparable properties, insofar
as this information shows the need for the “adjustments” contemplated by the statute,
including quality, size, age, and depreciation, could be potentially relevant to a
determination of whether an appraisal district has appraised properties unequally. See
Weingarten, 93 S.W.3d at 282; United Investors, 47 S.W.3d at 650. As these cases
illustrate, adjustments made between and among properties may be quantified by
comparing characteristics that result in differences in appraised and market value—as
reflected by a price placed on various kinds of “adjustments.” Though such
information may not always be essential to assert or defend a claim for unequal
taxation, it is not so irrelevant as to render it undiscoverable. Moreover, with some
exceptions, “appraised value” should be “market value.” United Investors, 47 S.W.3d
at 652. We therefore hold that requests for information regarding the market value
of the Coker Unit are reasonably calculated to lead to the discovery of admissible
evidence for use in comparing properties and evaluating adjustments. We further
hold that the trial court did not abuse its discretion in allowing inquiry into the market
value of the particular Coker Unit at issue. See Tex. R. Civ. P. 192.3(a) (allowing
party to obtain discovery on any matter that is not privileged and is relevant to subject
matter of pending action or appears reasonably calculated to lead to discovery of
admissible evidence).
B.      GCAD’s Requests
          Valero contends that, even if information concerning the market value of the
Coker Unit is discoverable, GCAD’s requests are overly broad and unduly
burdensome, as they seek information well beyond that admissible to prove the Coker
Unit’s value in the unequal taxation context. We agree.
          1.       Irrelevant Requests
          Valero contends GCAD’s discovery goes beyond the scope of a claim for
unequal taxation under section 42.26(a)(3) because it seeks information beyond that
necessary to determine whether “the appraised value of the property exceeds the
median appraised value of a reasonable number of comparable properties
appropriately adjusted.” Valero points to GCAD’s requests that do not relate to the
2004 valuation of the Coker Unit at issue in any way and requests that are unlimited
in time frame and scope. Valero thus characterizes GCAD’s discovery as an improper
fishing expedition. See Texaco, Inc., 898 S.W.2d at 815. GCAD responds that a suit
under section 42.26(a)(3) requires discovery “geared to determine whether or not the
Coker Unit is, indeed, comparable to other units and appropriately adjusted.” GCAD
contends that its discovery requests involve elements that are relevant to such a
determination. 
          Generally, the scope of discovery is within the discretion of the trial court. In
re CSX Corp., 124 S.W.3d 149, 152 (Tex. 2003). The trial court abuses its discretion,
however, if it orders discovery that exceeds that permitted by the Rules of Civil
Procedure. Id. Pursuant to the Rules, discovery must be “relevant to the subject
matter of the pending action” even if it would be inadmissible at trial, as long as the
“information sought appears reasonably calculated to lead to the discovery of
admissible evidence.” Tex. R. Civ. P. 192.3; In re CSX Corp., 124 S.W.3d at 152. 
Discovery requests must be reasonably tailored to include only relevant matters and
must show a reasonable expectation of obtaining information that will aid in the
resolution of the dispute. In re CSX Corp., 124 S.W.3d at 152. A request is not
overly broad merely because it seeks some information of doubtful relevance, but a
request that seeks relevant information must be narrowly tailored. In re Am. Optical
Corp., 988 S.W.2d at 713.
          The issue in this case is whether the Coker Unit is comparable to other coker
units and what adjustments have to be made. Of those discovery requests GCAD
served on Valero, Valero challenges the following interrogatories:
 
 
          No. 5:     Please state the cost of constructing the Coker Unit made the
basis of this suit, and who paid this cost. Also, please state the
cost for each part, component or portion of the improvement
on the Coker Unit . . . for which cost figures are available, and
also the date such cost was incurred and paid.
          No. 8:     Please describe, with specificity and in detail, any financing
relating to or secured by the subject Coker Unit, and who
provided the financing.
          No. 9:     Please identify your officers, directors and owners since
January 1, 2002.
          No. 19:   Please state the amount of capital expenditures either (1)
incurred to date, or (2) expected to be incurred within the next
three years, relating to the Coker Unit made the basis of this
suit.
          In addition, Valero challenges the following requests for production served on
Valero Refining-Texas, L.P., individually:
 
          No. 3:    Documents identifying Valero’s officers, directors, and
owners. 
          No. 5:    All documents which contain a cost/benefit or economic
analysis of the Coker Unit. 
          No. 7:     All documents relating to the decision to approve and proceed
with constructing the Coker Unit. 
          No. 8:     All documents relating to alternatives to building the subject
Coker Unit made the basis of this suit which were reviewed or
considered. 
          No. 9:     Board of Directors minutes approving the construction of the
Coker Unit. 
          No. 11:   Documents identifying the owners of the Coker Unit since its
construction commenced. 
          No. 13:   All documents related to financing concerning the Coker Unit.
          No. 16:   Please produce any and all documents relating to the cost to
construct the Property. 
          No. 17:   All documents identifying the person(s) who made the
decision to construct the Coker Unit. 
          No. 26:   All documents discussing either (1) anticipated cost savings or
additional income, or (2) actual cost savings or additional
income, resulting from the addition of the Coker Unit . . . to
the refinery. 
          No. 27:   All permits relating to the construction or operation of the
Coker Unit.
          No. 29:   All documents discussing capital expenditures incurred to
date, or expected to be incurred within the next three years,
relating to the Coker Unit.
          No. 32:   All policies covering or insuring the Coker Unit. 
          No. 35:   All employee operation manuals relating to the Coker Unit.
          No. 43:   All documents describing how the Coker Unit will allow you
to run cheaper crude oil through the Texas City refinery.
          No. 44:   All patents, copyrighted materials, or proprietary processes
relating to the Coker Unit. 
          Valero challenges the following requests for production served on MHCB,
individually:
 
          No. 2:          All appraisals and valuation reports concerning the refinery
where the Coker Unit is located, which have an effective
date after January 1, 2002. 
          No. 3:         Documents identifying MHCB’s officers, directors, and
shareholders since January 1, 2002. 
          No. 7:          Produce all files relating to the property and/or any loans,
credit facilities or other financing agreements relating
thereto. This request includes but is not limited to loan
files, collateral files, credit files, and related documents.
          No. 10:        All documents relating to approval of any loans, credit
facilities, lines of credit or financing relating to the Coker
Unit. 
          No. 12:        All documents indicating all owners of the Coker Unit,
since its construction commenced. 
          No. 18:        All documents identifying the person(s) who made the
decision to construct the Coker Unit. 
          No. 29:        All documents discussing capital expenditures incurred to
date, or expected to be incurred within the next three years,
relating to the Coker Unit.
          No. 32:        All insurance policies covering or insuring the Coker Unit. 

          Valero objected to these requests on the basis that they are “not relevant to the
subject matter involved in the pending action, nor reasonably calculated to lead to the
discovery of admissible evidence.”


 Valero contends that proper discovery in a 
section 42.26(a)(3) claim is limited to “the matters relevant to the case, as those
matters are described by the statute and by the court in United Investors and 
Weingarten.” 
          Examining the discovery requests here, it is apparent that many of the requests
or their subparts are irrelevant to the 2004 valuation of the Coker Unit. For instance,
nothing in the requested discovery of the names of both MHCB’s and Valero’s
officers, directors, shareholders, and owners, or of who decided to construct the
Coker Unit or what alternatives were considered


 is tailored to lead to admissible
evidence that would directly or indirectly resolve whether the Coker Unit is
comparable to other coker units and what adjustments should be made with regard to
factors such as size, age, and depreciation of the facility. Similarly, nothing in the
discovery of who paid the cost, or who financed it, or the details of that financing



relates to whether the Coker Unit is comparable to other coker units and what
adjustments have to be made. Further, requests for all operational permits, employee
manuals, patents, copyrights, or proprietary processes


 are beyond the sort of
information reasonably calculated to lead to admissible evidence in a trial to resolve
whether the Coker Unit is comparable to other coker units for taxation purposes and
what adjustments to its value should be made. Finally, the requests are not limited
to a reasonable time frame for a suit that involves only the 2004 tax year, generally
and in particular with respect to cost savings and capital expenditures.



          In sum, GCAD’s discovery includes a number of irrelevant requests and thus,
overall, does not appear to be “reasonably tailored” to include only matters that
evidence “a reasonable expectation of obtaining information” that will assist in the
resolution of whether the Coker Unit is comparable to other coker units and what
adjustments have to be made. See In re CSX Corp., 124 S.W.3d at 152. Rather than
attempting to set the precise bounds of discovery, the trial court should be given an
opportunity to reconsider its ruling in light of this opinion. See In re Am. Optical,
988 S.W.2d at 713–14.
          2.  Unduly Burdensome Requests 
          Valero challenges several requests


 on the basis that responses would be
unduly burdensome to produce. Those not addressed above and that Valero
challenges solely on the grounds of undue burden are as follows: 
 
          No. 24:        All correspondence or communications Valero had with
Foster Wheeler, or any subcontractors or suppliers, relating
to the construction of the Coker Unit. 
          No. 25:        All documents that state an opinion of the value of some or
all of the Coker Unit.
          No. 28:        All final inspections. 
          No. 33:        Produce any and all documents relating to any other
delayed coker units you have financed or provided services
for, other than the Property.
          No. 34:        All industry reports or third party studies which discuss
either (1) the Coker Unit or (2) delayed coking. 
          Valero contends that the information is unduly burdensome because, as
demonstrated in the affidavit of Trey Novosad, Director of Ad Valorem Tax for
Valero, “the requests implicate thousands of files and would take weeks to cull
through.” Valero explains that the information is located in sixty of its file cabinets.
          Requests for documentation may not be used to explore. In re CSX Corp., 124
S.W.3d at 152. Discovery requests that are not limited as to time frame or scope are
impermissibly overbroad. Gen. Motors Corp. v. Lawrence, 651 S.W.2d 732, 733–34
(Tex. 1983). A prime factor in “determining overbreadth is whether the request could
have been more narrowly tailored to avoid including tenuous information and still
obtain the necessary, pertinent information.” In re Am. Optical, 988 S.W.2d at 713.
          Here, the principal issue in the underlying suit is valuation of the Coker Unit
for tax year 2004. The requested discovery is not limited to any time frame related
to the 2004 tax year. In addition, the scope of the requested discovery is not limited
to the subject matter of the underlying suit, that of determining whether the particular
Coker Unit is comparable to other coker units and what adjustments should be made. 
See Texaco, Inc., 898 S.W.2d at 815 (holding that request for “all documents authored
. . . on the subject of safety,” without limitation as to time, place, or subject matter,
is overbroad).
          We note that the trial court ordered production in request number 34 of “only
those documents in Valero’s possession.” However, the discovery of “all industry
reports or third party studies about other coking units” in general, without any
limitation geographically or as to time frame,


 is an unduly burdensome request. As 
GCAD asserts, “[t]rue comparison of comparable properties requires a comparison
of . . . ‘comparable Coker Units.’” (Emphasis added).  
 
          We hold that these discovery requests are unduly burdensome because they are
not appropriately limited in time frame or scope. See Texaco, Inc., 898 S.W.2d at
815.



 
 
 
 
 
 
 
 
 
 
 
 
 
 
CONCLUSION
          We conclude that requests for information regarding the 2004 market value of
the Coker Unit are reasonably calculated to lead to admissible evidence and thus the
trial court did not abuse its discretion in allowing discovery as to its market value. 
We further conclude, however, that the trial court erred in ordering Valero to respond
to GCAD’s particular discovery requests because the challenged requests are not
reasonably tailored to include only matters relevant to the subject matter of the case
and thus are overly broad and unduly burdensome requests. We therefore
conditionally grant mandamus relief. See id. (concluding that trial court abused its
discretion by requiring production not limited to matters relevant to resolving case). 
We are confident that the trial court will promptly comply, and our writ will issue
only if it does not.


                                                             Jane Bland
                                                             Justice


Panel consists of Justices Taft, Higley, and Bland.