**Opinion issued November 8, 2012**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-10-00154-CV

————————————

**HARRIS COUNTY APPRAISAL DISTRICT, Appellant**

**V.**

**HOUSTON 8TH WONDER PROPERTY, L.P., D/B/A SIX FLAGS ASTROWORLD, Appellee**

On Appeal from the 270th District Court
Harris County, Texas
Trial Court Case No. 2006-55173

<h1 style="text-align:center">OPINION ON REHEARING[*]</h1>

Appellee Houston 8th Wonder Property, L.P., d/b/a Six Flags Astroworld successfully protested the 2006 appraised and market values of its commercial property as determined by appellant Harris County Appraisal District. *See* TEX. TAX. CODE ANN. § 41.41(a) (West 2008). Both the property owner and the appraisal district invoked their rights to seek judicial review of the appraisal review board's valuation. *See id*. §§ 42.01, 42.02 (West 2008 & Supp. 2012). The appraisal district's appeal was dismissed by the district court for want of jurisdiction. After a de novo bench trial, the district court entered a final judgment further lowering the appraised value of the property, and the appraisal district appealed from that judgment. *See id.* § 42.28 (West 2008).

We conclude that the dismissal of the appraisal district's appeal was error. Despite this error, the ruling that the appraisal district sought to challenge by its appeal—the appraisal review board's valuation—remained at issue in the de novo trial that ensued for the property owner's appeal. The record reflects that the appraisal district was permitted to actually present its arguments and evidence about the market value of the property, both at trial and in post-trial briefing, and without any substantive limitation. Because the district court ultimately heard and

---

[*] The appraisal district filed a motion for rehearing in this case. We grant the appraisal district's motion, withdraw our opinion and judgment of May 17, 2012, and substitute this opinion and judgment in their place.

determined the appraised value of the property de novo, on this record there is no basis to conclude that the error probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a).

We also reject the appraisal district's remaining issues on appeal, relating to the admissibility of expert testimony and the constitutionality of the judgment. Accordingly, we affirm.

## Background

Houston 8th Wonder purchased 104.196 acres of unimproved land in Harris County on May 31, 2006 for $77,000,000. This property was formerly the site of the Six Flags Astroworld theme park. The Harris County Appraisal District appraised 101.833 acres of the purchased tract at a value of $74,668,035 for the 2006 tax year. The property owner protested this appraisal to the appraisal review board under section 41.44 of the Tax Code, presenting two grounds: (1) "Value is over market," and (2) "Value is unequal compared with other properties." The ARB panel "determined that the property appraisal is incorrect and unequal and the value should be changed." The ARB reduced both the property's market value and appraised value from $74,668,035 to $48,054,000.

Both the property owner and the appraisal district appealed to the district court. The property owner sought relief for unequal appraisal, alleging that it was "entitled to have the court order the value changed to [the] median level of

3

appraisal in accordance with Section 42.26 of the Texas Tax Code." The appraisal district alleged that the "appraised value as determined by the Appraisal Review Board is far lower than the actual fair market value of the Property as of January 1, 2006," and it requested that the court "determine the market value of the Property and increase its appraised value on the appraisal roll as authorized by sections 42.23 and 42.24 of the Tax Code."

The property owner filed a motion to dismiss the appraisal district's appeal for lack of jurisdiction. The district court granted that relief after a hearing. A de novo bench trial was conducted on the property owner's appraised-value challenge. The district court rendered judgment in favor of the property owner that the appraised value of the subject property was $31,938,000 for the 2006 tax year. The court also issued findings of fact and conclusions of law. The appraisal district now appeals from that judgment.

## Analysis

### I. Appraisal district's appeal from appraisal review board's order

In its second issue, the appraisal district argues that the district court erred by granting the property owner's plea to the jurisdiction because the statutory requirements for an appeal of an ARB order by the chief appraiser had been satisfied. We review a trial court's ruling on a plea to the jurisdiction de novo.

4

*KM-Timbercreek, L.L.C. v. Harris Cnty. Appraisal Dist.*, 312 S.W.3d 722, 726 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

## A. Right of appeal by chief appraiser

Section 42.02 of the Property Tax Code provides that "the chief appraiser is entitled to appeal an order of the appraisal review board determining" a taxpayer protest. TEX. TAX CODE ANN. § 42.02(a)(1). A chief appraiser who wishes to appeal such an order of the ARB must (1) obtain written approval of the board of directors of the appraisal district, (2) file a written notice of appeal within 15 days of receipt of the notice from the ARB determining the taxpayer protest, and (3) deliver a copy of the notice of appeal to the property owner whose property is involved in the appeal. *Id.* §§ 42.02(a), 42.06(a), (c). In this case, the chief appraiser obtained written approval from the board of directors to appeal the ARB order determining the property owner's protest. Six days later, the appraisal district filed a notice of appeal and sent a copy to the property owner. The appraisal district thus satisfied the statutory prerequisites to appeal the ARB order. The property owner presented three arguments to the court in support of its plea, each of which we address below.

### 1. *Actual market valuation controversy.*

The appraisal district's petition sought a determination of "the market value of the Property." The property owner argued in the district court that its original

tax protest had been limited to the question of equal and uniform appraisal because that was the only relevance of the evidence it presented to the ARB. *See id.* § 42.26 (remedy for unequal appraisal). The property owner thus argued that the ARB's order did not implicate market value and there was "no ARB order for [the appraisal district] to appeal based on market value." However, the "Property Tax Notice of Protest" filed by the property owner listed two reasons for protest, namely: (1) value is over market and (2) value is unequal compared with other properties. In addition, the ARB order actually determined that the original property appraisal was both "incorrect and unequal," and it reduced not only the "appraised" value but also the "market" value from $74,668,035 to $48,054,000. Accordingly, the suggestions that the property owner did not challenge the property's market value and that the ARB did not actually lower market value are affirmatively disproved by the record on appeal.

2. *Appraisal district's "standing" to challenge ARB order.*

In a brief supporting the plea to the jurisdiction, the property owner argued that the chief appraiser had "no standing to appeal that which he had no standing to protest." The district court apparently found this argument persuasive, as its conclusions of law expressly noted that it lacked jurisdiction over the appraisal district's appeal because the "Chief Appraiser has no right of appeal of an ARB order on any basis which the protesting property owner does not have." The

6

consequence of this reasoning is that the property owner's evidence and arguments presented to the ARB establish the exclusive parameters for any subsequent appeal of the ARB ruling by either party to the proceeding. Thus the property owner contended that the appraisal district could not appeal the order on market-value grounds that had not been a basis for the original tax protest.

This argument is apparently premised upon the requirement applicable to property owners that administrative remedies must be exhausted before seeking judicial review of an appraisal district's property valuation.[1] However, the procedural differences between the avenues of appeal available to the property owner and the appraisal district require that the exhaustion principle be applied differently to the two types of appeals. Only the property owner, and not the chief appraiser or the taxing unit, has the right to protest the appraised value of a single

---

[1] "Because the administrative procedures established by the Code are exclusive of a taxpayer's other remedies, a taxpayer must first exhaust all administrative remedies before seeking judicial review of a taxing authority's actions." *ABT Galveston Ltd. P'ship v. Galveston Cent. Appraisal Dist.*, 137 S.W.3d 146, 152 (Tex. App.—Houston [1st Dist.] 2004, no pet.). The taxpayer's failure to comply with the Code requirements, such as not protesting the initial valuation before the appraisal review board, deprives the reviewing district court of jurisdiction over the taxpayer's appeal. *See, e.g.*, *id.* at 152.

taxpayer's property before the ARB.[2] But both the property owner and the chief appraiser have distinct rights to appeal the ARB order determining the protest.[3]

Unlike the property owner, the appraisal district had no prior administrative remedy to exhaust at the ARB stage of the proceedings. As the entity responsible for the initial property valuation, the appraisal district had no right to initiate the protest procedure and no control over what objections would be presented by the property owner to the ARB. Regardless of what issues were presented by the property owner, the appraisal district had no grievance until the ARB altered its determination of the property's market value and appraised value. The statutory procedure for the appraisal district to complain about the ARB's ruling began with its right of "appeal" to the district court for a trial de novo. Thus, because the appraisal district contended that the ARB erred by reducing the property's market value and appraised value, and it followed the statutory procedures for initiating an appeal, it had standing to challenge the ARB's order in accordance with its

---

[2] *See* TEX. TAX CODE ANN. § 41.41 (West 2008) (property owner's right of protest); *see also id.* § 41.03(a) (challenge by taxing unit may not include "the appraised value of a single taxpayer's property").

[3] *See id.* § 42.01 (West Supp. 2012) (right of appeal by property owner); *id.* § 42.02 (West 2008) (right of appeal by chief appraiser). Such appeals are to the district court, and review is "by trial de novo." *Id.* § 42.23(a) (West Supp. 2012).

statutory right to do so. There was no prior administrative procedure available to the appraisal district that it failed to exhaust.

3.     *Relevance of market valuation.*

Finally, the property owner argued that market value, which the appraisal district sought to challenge in its appeal, is irrelevant to the issue of unequal appraisal, which was a basis of the property owner's protest to the ARB and appeal to the district court. Section 42.26 of the Tax Code specifies three methods for determining if a property has been unequally appraised:

> The district court shall grant relief on the ground that a property is appraised unequally if:
>
> (1)     the appraisal ratio of the property exceeds by at least 10 percent the median level of appraisal of a reasonable and representative sample of other properties in the appraisal district;
>
> (2)     the appraisal ratio of the property exceeds by at least 10 percent the median level of appraisal of a sample of properties in the appraisal district consisting of a reasonable number of other properties similarly situated to, or of the same general kind or character as, the property subject to the appeal; or
>
> (3)     the appraised value of the property exceeds the median appraised value of a reasonable number of comparable properties appropriately adjusted.

TEX. TAX CODE ANN. § 42.26(a). Although market value may not be necessary to a determination made pursuant to Tax Code section 42.26(a)(3), it is not irrelevant to a determination of appraisal value made pursuant to section 42.26(a)(1) & (2).

9

Section 1.12 of the Tax Code defines the term "appraisal ratio" as used in section 42.26(a)(1) & (2) as follows:

> An appraisal ratio is the ratio of a property's appraised value as determined by the appraisal office or appraisal review board, as applicable, to:
>
> (1)    the appraised value of the property according to law if the property qualifies for appraisal for tax purposes according to a standard other than market value; or
>
> (2)    the market value of the property if Subdivision (1) of this subsection does not apply.

*Id.* § 1.12(b) (West 2008). Because market value is an element of the calculation of "appraisal ratio" that may be used to determine whether an appraisal is equal and uniform, the market value is not irrelevant,[4] and the property owner's argument to the contrary was incorrect.

We conclude that the appraisal district had the right to appeal from the ARB's order. Irrespective of any rights the property owner might exercise to appeal from an order of the appraisal review board, the Tax Code separately authorizes the chief appraiser to appeal an ARB order determining a taxpayer

---

[4]    *See In re MHCB (USA) Leasing & Fin. Corp.*, No. 01-06-00075-CV, 2006 WL 1098922, at *4 (Tex. App.—Houston [1st Dist.] Apr. 27, 2006, orig. proceeding) (mem. op.) (stating that "information regarding both the appraised and the market value of comparable properties, insofar as this information shows the need for the 'adjustments' contemplated by the statute, including quality, size, age, and depreciation, could be potentially relevant to a determination of whether an appraisal district has appraised properties unequally").

protest. *Id.* § 42.02(a)(1). In this case, the appraisal district fulfilled all of the statutory requirements to appeal the ARB's order by (1) filing a timely notice of appeal, (2) obtaining written approval of the board of directors, and (3) notifying the taxpayer that the chief appraiser has filed a notice of appeal. *See id.* §§ 42.02, 42.06. The appraisal district's appeal was not barred for failure to exhaust administrative remedies; it had no predicate administrative remedy to exhaust in this situation. Finally, market value was not irrelevant to the questions at issue in this appeal. Accordingly, we hold that the district court had jurisdiction over the appraisal district's appeal.

## B. Harm analysis

To reverse the judgment on appeal, we must conclude that any error probably caused the rendition of an improper judgment or prevented the appellant from properly presenting its appeal. TEX. R. APP. P. 44.1(a). To make this determination, we review the entire record. *See, e.g.*, *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex. 1992). We are also mindful that an erroneous decision by a trial court can be rendered harmless by subsequent events. *See, e.g.*, *Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 921 (Tex. 2005).

In the circumstances of this case, a de novo bench trial mooted the effect of granting the property owner's jurisdictional plea. Both parties had attempted to appeal from the ruling of the ARB—the appraisal district wanted to increase the

ARB's appraised value of the property, while the property owner wanted to further decrease that value. After dismissing the appraisal district's appeal, the court conducted a trial de novo, in which it was empowered to grant relief in favor of either side by either increasing or decreasing the property values at issue. *See Cherokee Water Co. v. Gregg Cnty. Appraisal Dist.*, 801 S.W.2d 872, 877 (Tex. 1990). The district court granted relief in favor of the property owner, further reducing the appraised value of the property beyond the reduction already achieved in the protest proceeding before the ARB.

If the court had not dismissed the appraisal district's appeal, the resulting proceeding still would have concerned the appraised value of the same property. The appraisal district was not required to perfect its own appeal for the trial court to have the ability to increase the property value in its de novo determination of "the appraised value of property in accordance with the requirements of law." TEX. TAX CODE ANN. § 42.24(1); *see Cherokee Water*, 801 S.W.2d at 877. The appraisal district remained free to present its evidence and arguments in favor of a higher value, and the record does not show that the appraisal district was in any way prevented from doing so. Even though the appraisal district's appeal was dismissed and the property owner took the position that evidence of market value was irrelevant to the proceeding, the district court nevertheless admitted all of the evidence offered by the appraisal district, including evidence of market value

12

which was admitted over the property owner's relevance objections.  The appraisal district also cross-examined the property owner's valuation expert about his failure to incorporate market value into his analysis.

The appraisal district has provided no suggestion of how the erroneous dismissal of its appeal probably caused the rendition of an improper judgment with respect to the trial court's final determination of appraised value.  *See* TEX. R. APP. P. 44.1(a).  Neither has it demonstrated that the error probably prevented it from presenting its appeal.  *See id*.  Our review has revealed no such harm.  We therefore overrule the appraisal district's second issue.

## II.    Expert testimony

In its first issue, the appraisal district argues that the trial court abused its discretion in admitting the testimony of the property owner's expert, Gerald Teel.  The appraisal district contends that Teel's testimony was unreliable because of a flawed methodology and his failure to produce certain documents upon which he relied.  For these reasons, the appraisal district asserts that Teel's testimony was no evidence.

Ordinarily, a challenge to the admissibility of evidence, including whether expert testimony is reliable, is reviewed for an abuse of discretion.  *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 638 (Tex. 2009); *see Harris Cnty. Appraisal Dist. v. Kempwood Plaza, Ltd.*, 186 S.W.3d 155, 157 (Tex. App.—Houston [1st

13

Dist.] 2006, no pet.). A trial court has broad discretion in deciding whether to admit or exclude expert testimony, and this court will uphold a trial court's evidentiary ruling if a legitimate basis for the ruling exists. *See Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 719–20 (Tex. 1998); *Weingarten Realty Investors v. Harris Cnty. Appraisal Dist.*, 93 S.W.3d 280, 283 (Tex. App.—Houston [14th Dist.] 2002, no pet.). We will reverse only if the court acted arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Kempwood Plaza*, 186 S.W.3d at 157.

To be admissible, expert testimony must be both relevant and reliable. *Gammill*, 972 S.W.2d at 727; *Kempwood Plaza*, 186 S.W.3d at 157. Expert testimony is relevant when it assists the fact finder in determining an issue or in understanding other evidence. *See* TEX. R. EVID. 702; *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 234 (Tex. 2010). As to reliability, the court must examine the expert's methodology, foundational data, and whether too great an analytical gap exists between the data and methodology, on the one hand, and the expert's opinions, on the other. *See Gammill*, 972 S.W.2d at 728; *Kempwood Plaza*, 186 S.W.3d at 159. "[I]t is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim will not stand or fall on the mere *ipse dixit* of a credentialed witness." *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999).

When a party asserts on appeal that an expert's testimony is insufficient because it is unreliable, a court will ordinarily consider both the *Robinson* reliability factors and the expert's experience. *Whirlpool*, 298 S.W.3d at 638; *see E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995) (identifying factors for courts to consider in evaluating reliability of expert testimony). *Robinson* set out the following list of nonexclusive factors: (1) the extent to which the theory has been or can be tested, (2) the extent to which the technique relies upon the subjective interpretation of the expert, (3) whether the theory has been subjected to peer review and/or publication, (4) the technique's potential rate of error, (5) whether the theory or technique has been generally accepted as valid by the relevant scientific community, and (6) the non-judicial uses which have been made of the theory or technique. *Robinson*, 923 S.W.2d at 557. However, not all of these factors may applicable to a case, like this one, involving specialized but non-scientific expert testimony. *See Weingarten*, 93 S.W.3d at 285; *see also Kempwood Plaza*, 186 S.W.3d at 157–58. Likewise, when the opponent of the testimony stipulates that the expert is qualified, an appellate court need not review that finding. *See Kempwood Plaza*, 186 S.W.3d at 158.

Because the appraisal district stipulated that Teel was qualified as a real estate appraiser, we limit our analysis to the reliability of his testimony. Thus, we will examine his methodology and the foundational data upon which he relied.

15

Teel testified that his assignment was to evaluate the subject property under section 42.26 of the Texas Tax Code. Section 42.26(a)(3) provides that "[t]he district court shall grant relief on the ground that a property is appraised unequally if: . . . the appraised value of the property exceeds the median appraised value of a reasonable number of comparable properties appropriately adjusted." TEX. TAX CODE ANN. § 42.26(a)(3). The "'appraised value' means the value as determined by Chapter 23 of this code." *Id.* § 1.04(8). Chapter 23 provides that, "[e]xcept as otherwise provided by this chapter, all taxable property is appraised at its market value as of January 1." *Id.* § 23.01(a) (West Supp. 2012).

To determine if "the appraised value of the property exceeds the median appraised value of a reasonable number of comparable properties appropriately adjusted" under section 42.26(a)(3), "the appraisal expert determines a reasonable number of comparable properties. Then, the expert takes the appraised value of those properties from the public record, and appropriately adjusts them to the subject property." *In re MHCB (USA) Leasing & Fin. Corp.*, No. 01-06-00075-CV, 2006 WL 1098922, at *3 (Tex. App.—Houston [1st Dist.] Apr. 27, 2006, orig. proceeding) (mem. op.); *Weingarten*, 93 S.W.3d at 286. The comparable properties are adjusted according to factors that tend to influence value, such as location, age, depreciation, physical characteristics of the property, and "economic factors." *Id.*; *see Harris Cnty. Appraisal Dist. v. United Investors Realty Trust*, 47

16

S.W.3d 648, 650 n.4 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *see also Kempwood Plaza*, 186 S.W.3d at 160–61. Finally, "the appropriately adjusted comparable properties are arrayed and a median is determined." *Weingarten*, 93 S.W.3d at 286.

Section 42.26(a)(3) does not delineate what specific considerations are relevant for adjustment. *MHCB*, 2006 WL 1098922, at *4. In *Harris County Appraisal District v. United Investors Realty Trust*, the parties relied upon values of comparable properties taken from the appraisal district's tax rolls, but they made adjustments for location, traffic, access, age, and depreciation. 47 S.W.3d at 650 n.4. The Fourteenth Court of Appeals held that a protest alleging only that the appraised value is not uniform and equal does not require independent proof of the market value of the comparable properties. *Id.* at 653. The court explained that the tax rolls could be used to determine value, with "the only independent analysis required [being] adjusting the appraised values to put the properties on equal footing." *Id.* This court has also held that an appraiser may base his adjustments on his personal experience. *Kempwood Plaza,* 186 S.W.3d at 161 ("Appraising property is not an exact science based on set mathematical formulas. It is not error for an appraiser to use his or her personal experience and expertise to make certain determinations.").

17

Teel testified that he considered adjustments for location to be much more subjective than adjustments for size of the property, which could be done based on a well-established logarithmic relationship between size and value that has been widely used and tested by appraisers. He explained that the nearest vacant tracts of land were "purely industrial in nature" and would not "have the same highest and best use at all." Therefore, he considered only properties that had the same "neighborhood code" on tax rolls of the appraisal district. He testified that he looked to properties that were being used for the types of businesses that would potentially form part of the mixed-use development, which was the highest and best use of the subject property. He considered only the unimproved value of the comparable properties because the subject property was unimproved. He also testified that the comparables were smaller than the subject property, but they were the largest ones in the neighborhood. Teel said, "So there's really just not any vacant tracts of land within the immediate vicinity."

Teel's testimony makes clear that he followed a statutorily-approved methodology for estimating an appraised value. *See* TEX. TAX CODE ANN. § 42.26(a)(3). He used the appraisal value of the comparable properties as listed in the tax rolls as his starting point. When he adjusted the values of the comparable properties, he relied on generally accepted appraisal principles that are commonly used among professionals in his field. Teel testified that his methodology had been

18

tested, was generally accepted as valid, and was mandated, to some extent, by statute. *See, e.g.*, *Robinson*, 923 S.W.2d at 557. By choosing to limit the comparable properties he selected to those near the subject property, he minimized the extent to which his analysis relied on his subjective interpretation. *See id.*

Relying on *Covert v. Williamson Central Appraisal District*, 241 S.W.3d 655 (Tex. App.—Austin 2007, pet. denied), the appraisal district argues that the properties Teel selected are not comparable because they are improved and the subject property is vacant. In *Covert*, the court of appeals held that section 42.26 did not permit a taxpayer to appeal the valuation of only a component part of his property. 241 S.W.3d at 659. Rather, the statute provides for an appeal of the entire property valuation, which includes both the land and the improvements. *Covert* does not address the admissibility question posited here: whether an expert's testimony is inherently unreliable when, in the absence of any similarly sized and situated vacant tracts of land, he considers the land-only value of similarly sized and situated improved properties to reach an opinion of whether the subject property was unequally appraised. "The question of the degree of similarity necessary to render testimony of sales of other property admissible in evidence rests largely in the discretion of the trial judge." *Cherokee Water Co. v. Gregg Cnty. Appraisal Dist.*, 773 S.W.2d 949, 955 (Tex. App.—Tyler 1989), *aff'd* 801 S.W.2d 872 (Tex. 1990). We conclude that the court did not abuse its

discretion by permitting Teel to testify based on the comparable values he used in his analysis. *Cf. Cherokee Water Co.*, 773 S.W.2d at 954 ("The peculiar circumstances affecting the subject property make it difficult to appraise by any orthodox appraisal method.").

We conclude that Houston 8th Wonder met its burden to show the reliability of Teel's testimony, and we hold that the trial court did not abuse its discretion in admitting his testimony. In addition, we further hold that Teel's testimony was legally sufficient to support the trial court's judgment.

The appraisal district also argues that the trial court should have excluded Teel's testimony because he testified that some documents from his work file were not provided in discovery because they were lost. In his deposition, Teel testified that his work file previously included other documents that he did not produce:

> This file had two or three inches of research that we had done throughout that South Loop area and other areas of Houston, yes, ma'am. There was a number of documents that are just missing in my office, is all I can tell you. . . . I have [made a thorough search]. . . . [T]he lady who worked with me on this, [K.B.], actually quit just after this; and she told me she thought she took them home and put them in her garage, and she couldn't find them. So, I mean, I don't know. I don't have them. Sorry.

Before trial, the appraisal district moved to exclude Teel's testimony on the basis that he failed to maintain his work file or destroyed evidence. The appraisal district asserted that it was entitled to "all documents, tangible things, physical models, reports, compilations of date, or other material provided to, reviewed by,

or prepared by or for the retained testifying expert in anticipation of the expert's testimony." The appraisal district relied upon Texas Rules of Civil Procedure 192.3 and 194.2 and argued that Teel's explanation of his lost work file was "an excuse which would not work for a fourth grader." In arguing the legal reasons that justified excluding Teel's testimony, the appraisal district relied primarily on *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579, 113 S. Ct. 2786 (1993), *E.I. du Pont de Nemours and Company, Inc. v. Robinson*, 923 S.W.2d 549 (Tex. 1995), and their progeny. The appraisal district did not specifically ask that Teel's testimony be struck as a sanction for discovery abuse under Rule 215 or under the rule of exclusion in Rule 193.6. After arguing that the unreliability of Teel's methodology warranted exclusion, the appraisal district added, "Further, Teel failed to maintain his work file." At trial, the appraisal district again objected to Teel's testimony based on its alleged unreliability and "as a discovery matter," and the trial court denied the motion.

Texas Rule of Civil Procedure 193.6 provides for exclusion of evidence at trial when a party fails to properly respond to a discovery request.

> A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:
>
> (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or

21

> (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

Tᴇx. R. Cɪv. P. 193.6.  The trial court entered findings of fact pertinent to the appraisal district's request to exclude the evidence.  Specifically, the trial court found:

> 31.    Teel's loss of his "work file" for his analysis and report in this case was not intentional, but rather inadvertent and reasonably explained by Teel;
>
> 32.    The loss of Teel's work file did not materially prejudice HCAD in contesting Teel's work and analysis in that: a) Teel timely furnished a complete report to HCAD which contained a detailed explanation of his work and identified all relevant data which was in his work file upon which he relied in forming his opinions; b) HCAD had ample opportunity to and did fully depose Teel in pre-trial discovery; c) HCAD had the unfettered right to and did fully cross-examine Teel at trial of this cause regarding his analysis and opinions; and d) HCAD had ample opportunity to offer competing or rebuttal evidence to that offered through Teel, but did not do so.

The appraisal district does not challenge the trial court's finding that the loss of Teel's work file was not intentional, but it argues that there is no evidence to support the court's finding that the loss of Teel's work file did not cause it prejudice.  The record shows that Teel provided a report dated August 15, 2007, which included a detailed explanation of his work and identified the relevant data that he relied upon to form his opinions.  The record also shows that on June 11, 2009, the appraisal district spent nearly four hours deposing Teel.  At trial, the

22

appraisal district was allowed to cross-examine Teel without limitation. The appraisal district offered excerpts from the deposition of a co-owner of the subject property, who said that the purchase price was $77 million and he considered it to be a market-value sale. But the appraisal district rested its case without introducing competing or rebuttal evidence to that offered by Teel. Based on our review of the record, we find that it supports the trial court's finding of fact as to lack of prejudice.

The appraisal district relies on *In re Christus Spohn Hospital Kleberg*, 222 S.W.3d 434 (Tex. 2007) (orig. proceeding), and appears to argue for automatic exclusion of Teel's testimony under Rule 193.6, without regard to the application of the exception found therein. *Christus Spohn* is distinguishable. In that case, the hospital inadvertently provided privileged material to its expert and sought to use the "snap-back" provision of Rule 193.3(d) to avoid having to produce this material to its opponent in discovery. 222 S.W.3d at 436. The Supreme Court of Texas held that the expert-disclosure requirements of Rule of Civil Procedure 192.3 precluded the snap-back of documents that were inadvertently produced so long as the producing party continues to rely on the expert to testify at trial. *Id.* at 445.

In this case, there is no suggestion that the property owner sought to protect certain documents from disclosure to the appraisal district. Rather, the documents

23

no longer existed. *Christus Spohn* is silent as to whether Rule 193.6(a) applies when documents that the expert prepared or reviewed in forming his opinion have gone missing as in the circumstances of this case. We see no reason why the exception in Rule 193.6(a) could not apply in this case.

We conclude that the trial court did not abuse its discretion by finding that an exception to the rule of exclusion in Rule 193.6 applied and by overruling the appraisal district's objection to Teel's testimony.

Accordingly, we overrule the appraisal district's first issue.

## III. Constitutionality of the trial court's judgment

In its third and final issue, the appraisal district argues that the trial court's judgment determining that the value of the subject property was approximately $31 million was unconstitutional because that value was unrelated to market value. This court rejected this argument in *Kempwood Plaza*. *See Kempwood Plaza*, 186 S.W.3d at 162. We overrule the appraisal district's third and final issue.

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Jennings, Bland, and Massengale.