

## Fourth Court of Appeals

### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00012-CV

Eria **SIMPSON**,
Appellant

v.

Darlene **GARCIA**,
Appellee

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CI11128
Honorable Angelica Jimenez, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:    Beth Watkins, Justice
Liza A. Rodriguez, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: January 10, 2024

AFFIRMED

In three issues, appellant Eria Simpson challenges a judgment rendered in favor of appellee Darlene Garcia. We affirm the trial court's judgment.

### BACKGROUND

Garcia sued Simpson after a 2019 automobile collision, alleging that Simpson's negligence caused injuries to Garcia's neck and back. During her treatment for those injuries, Garcia received epidural steroid injections from a pain management specialist, Dr. Karl Lautenschlager, in December of 2019 and January of 2020. In March of 2020, she began taking pain medication

prescribed by Lautenschlager's clinic. Her last in-person visit to Lautenschlager's clinic was in June of 2020.

The parties presented Garcia's claims to a Bexar County jury in June of 2022. Garcia testified about the collision, her injuries and current symptoms, the treatments she had undergone, the results of those treatments, and her desire for future treatment. She also presented her medical records, including billing records. When Garcia sought to present Lautenschlager's expert testimony, Simpson moved to exclude his opinions about Garcia's future medical expenses on the ground that those opinions were not based on reasonable medical probability. The trial court denied Simpson's motion.

After considering the evidence, the jury found in favor of Garcia and awarded her $25,000 for past physical pain; $0 for future physical pain; $24,000 for past physical impairment; $40,000 for future physical impairment; $23,372 for past medical expenses; and $160,000 for future medical expenses. The trial court signed a judgment consistent with the jury's verdict. After the trial court denied her post-trial motions, Simpson timely appealed the portion of the judgment that awarded Garcia $160,000 in future medical expenses.

## ANALYSIS

### *Admission of Expert Testimony*

In her first issue, Simpson argues the trial court abused its discretion by admitting Lautenschlager's testimony on Garcia's future medical expenses.

#### *Standard of Review*

"A trial court has broad discretion in deciding whether to admit or exclude expert testimony[.]" *Harris Cnty. Appraisal Dist. v. Hous. 8th Wonder Prop., L.P.*, 395 S.W.3d 245, 253 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). A trial court does not abuse its discretion unless its ruling is arbitrary, unreasonable, or made without reference to guiding rules or principles.

*Id.* We must uphold an evidentiary ruling if the record shows any legitimate basis for it. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

*Applicable Law*

To be admissible, expert testimony must be relevant, assist the trier of fact, and be offered by a qualified witness whose opinions are based on a reliable foundation. TEX. R. EVID. 702; *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995). To be reliable, an expert's opinion "must be based on a probability standard, rather than on mere possibility." *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 349 (Tex. 2015). "Opinion testimony that is conclusory or speculative is not relevant evidence and cannot support a judgment." *Gulley v. State Farm Lloyds*, 461 S.W.3d 563, 571 (Tex. App.—San Antonio 2014, pet. denied). An expert's "testimony is speculative if it is based on guesswork or conjecture." *Nat'l Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 156 (Tex. 2012). In evaluating the admissibility of expert testimony, "we look to the entire record, not to statements in isolation." *Gulley*, 461 S.W.3d at 571.

*Application*

Lautenschlager was Garcia's treating physician, and Simpson does not challenge his qualification to offer expert opinions about pain management in general or about Garcia's diagnoses and past medical care. *See* TEX. R. EVID. 702. However, she argues the trial court should have excluded his opinions as to Garcia's future medical care and expenses because his testimony showed those opinions were "based on speculation and mere possibilities and [were], thus, irrelevant and unreliable." As support for this assertion, she contends Lautenschlager did not offer any testimony about Garcia's own future medical needs, but merely "testified about what he 'typically' does for his patients in general." She also contends Lautenschlager told "the jury that he has no opinion on [Garcia's] need for future medical care."

We disagree with Simpson's characterization of Lautenschlager's testimony. It is true that Lautenschlager at times used words like "if," "might," "may," and "could be" when describing Garcia's future treatment. *Cf. Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 247 (Tex. 2008). He also testified that treatment for injuries like Garcia's "kind of depends on the individual" and that he "can't say [Garcia] needs future injections." But when viewed in light of the substance and context of his opinions as a whole, this phrasing is not fatal to the admissibility of his testimony. *See Gulley*, 461 S.W.3d at 571–72; *Bill Miller Bar-B-Q Enters., Ltd. v. Gonzales*, No. 04-04-00747-CV, 2005 WL 2176079, at *2 (Tex. App.—San Antonio Aug. 24, 2005, pet. denied) (mem. op.). Lautenschlager explained that if a patient's pain had not resolved within "a year or two, it's unlikely the body is going to fix it at that point. . . . [I]f they haven't gotten better within the first one or two years, the likelihood of suddenly everything going away becomes very, very slim." He then extrapolated this testimony to Garcia, stating unequivocally that because she was still experiencing symptoms three years after the collision, he believed "at the minimal, she's going to have some long-term effects" and "will at least have pain for quite sometime."

Furthermore, Lautenschlager described Garcia as being "on long-term medical management[.]" He testified that the non-injection pain medications listed in her medical records would require her "to be seen once every six months at least[.]" He also told the jury that if Garcia's pain were significant, future epidural injections "would be a treatment to keep . . . the pain levels at bay and keep her functional." He believed it was likely, within a reasonable degree of medical probability, that Garcia would experience the symptoms she reported for the rest of her life. He also testified it was reasonable to assume Garcia's pain levels would increase if she stopped taking her pain medication.

Our sister courts have rejected assertions that testimony similar to Lautenschlager's was too speculative to be admissible evidence of future medical expenses. *See Thrailkill v. Montgomery*

*Ward & Co., Inc.*, 670 S.W.2d 382, 385–86 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Keller Indus., Inc. v. Reeves*, 656 S.W.2d 221, 226–27 (Tex. App.—Austin 1983, writ ref'd n.r.e.); *Hughett v. Dwyre*, 624 S.W.2d 401, 407–08 (Tex. App.—Amarillo 1981, writ ref'd n.r.e.). We reach the same conclusion here. "The clear import of [Lautenschlager's] testimony" was that if Garcia was still experiencing significant pain—and, as explained more fully below, Garcia testified that was the case—then her condition was unlikely to resolve on its own, would be ameliorated by additional epidural injections, and would likely worsen without further medical care. *See Keller Indus.*, 656 S.W.2d at 227. The trial court did not act arbitrarily or unreasonably by concluding this testimony amounted to more than "conjecture, speculation or mere possibility" about Garcia's need for future medical care. *Cf. Hogue*, 271 S.W.3d at 247.

We overrule Simpson's first issue.

### Sufficiency of the Evidence

In her second issue, Simpson argues the evidence was legally and factually insufficient to support the judgment's award of future medical expenses.

### Standard of Review

When an appellant challenges the legal sufficiency of the evidence supporting an adverse finding on which she did not bear the burden of proof, she must establish that no evidence supports the finding. *See In re Marriage of Thrash*, 605 S.W.3d 224, 230 (Tex. App.—San Antonio 2020, pet. denied). We credit the evidence that supports the challenged finding if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam). If more than a scintilla of evidence supports the finding, the legal sufficiency challenge must fail. *See Tex. Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019).

In a factual sufficiency review, we consider the entire record, including evidence contrary to the challenged finding. *See Vast Constr., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 723 (Tex. App.—Houston [14th Dist.] 2017, no pet.). To prevail on a claim of factual insufficiency, the appellant must show the challenged finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Abrams v. Salinas*, 467 S.W.3d 606, 614 (Tex. App.—San Antonio 2015, no pet.).

"In either a legal or factual sufficiency review, issues of credibility and reconciling conflicts within the evidence are for the jury." *4922 Holdings, LLC v. Rivera*, 625 S.W.3d 316, 328 (Tex. App.—Houston [14th Dist.] 2021, pet. denied). We may not substitute our own judgment for the jury's, even if the evidence would support a different result. *See United Parcel Serv., Inc. v. Rankin*, 468 S.W.3d 609, 615 (Tex. App.—San Antonio 2015, pet. denied).

*Applicable Law*

"In Texas, the 'reasonable probability' rule is followed for damages for future medical expenses." *Aguirre v. Soto*, No. 04-16-00028-CV, 2016 WL 5922777, at *6 (Tex. App.—San Antonio Oct. 12, 2016, no pet.) (mem. op.) (internal quotation marks omitted); *Rosenboom Mach. & Tool, Inc. v. Machala*, 995 S.W.2d 817, 828 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). To prevail on a claim for future medical expenses, "the plaintiff must present evidence to establish that in all reasonable probability, future medical care will be required and the reasonable cost of that care." *Rosenboom*, 995 S.W.2d at 828. In cases where the "reasonable medical probability" standard applies, the evidence must establish "a reasonable degree of medical certainty[.]" *Hogue*, 271 S.W.3d at 247.

However, "[a]n award of future medical expenses is, by its very nature, not a matter of certainty." *Gunn v. McCoy*, 554 S.W.3d 645, 670 (Tex. 2018); *Aguirre*, 2016 WL 5922777, at *6. In deciding whether to award future medical expenses, a jury may consider "the nature of the

injury, the medical care rendered before trial, and the condition of the injured party at the time of trial." *Bill Miller Bar-B-Q*, 2005 WL 2176079, at \*2. "[A]n award of future medical expenses is a matter primarily for the trier of fact to determine." *Id.* "Because issues such as life expectancy, medical advances, and the future costs of products and services are, by their very nature, uncertain, appellate courts are particularly reluctant to disturb a jury's award of [future medical] damages." *Saeco Elec. & Util., Ltd. v. Gonzales*, 392 S.W.3d 803, 808 (Tex. App.—San Antonio 2012, pet. granted, judgm't vacated w.r.m.) (internal quotation marks omitted).

*Application*

### A.    Legal sufficiency

In attacking the sufficiency of the evidence to support the award on future medical expenses, Simpson focuses primarily on perceived deficiencies in Lautenschlager's expert testimony, arguing that his testimony "was speculative on its face and, thus, had no legal effect." As explained above, we disagree. Furthermore, "[w]hile the preferred practice is to establish future medical expenses through expert medical testimony," such testimony is not a prerequisite to the recovery of future medical expenses. *Hulsey v. Attalla*, No. 01-18-00180-CV, 2019 WL 3484082, at \*8 (Tex. App.—Houston [1st Dist.] Aug. 1, 2019, no pet.) (mem. op.); *Bill Miller Bar-B-Q*, 2005 WL 2176079, at \*2.

Garcia testified that she was 26 or 27 years old at the time of the collision and 29 at the time of trial. She explained that before the collision, she had never experienced any back or neck problems and "was capable of doing anything. You know, standing for a long period of time. Sitting for a long period of time. I was able to lift my child before the car accident." She also enjoyed dancing before the collision. After the collision, she experienced tingling, pain, numbness, and "really bad spasms[.]" She testified that at the time of trial, she was still experiencing "horrible" pain throughout her body, including headaches and back pain; she could not sit or stand

for too long; she was afraid to lift heavy objects; she could not carry her son during her pain spasms; and she could no longer go dancing. She told the jury that she "[b]arely" had any good days:

> The bad thing about what I have is that there is no telling when I'm going to go and have a spasm or have like headaches and back pain and all this numbness at the same time. It changes. There's nothing to say, okay, you know what. If I don't do anything that's going to trigger it. I know for sure standing for too long or sitting for too long, it does kind of trigger that, but other than that, I mean, like I said, it's barely any day that I have a good day that I'm maybe feeling like barely any pain.

When Simpson asked Garcia about an entry in her medical records showing she reported a pain level of "1/10" in June of 2020, Garcia responded, "It's never been that low" other than "right after receiving the injection[.]" Moreover, the medical record in question showed that at that time, Garcia was taking multiple pain medications, stated she was "able to do most [activities of daily living], but does so with pain," and reported her pain was "exacerbated by weather change and prolong [*sic*] sitting."

In addition to describing her symptoms, Garcia testified that the two epidural injections she previously received helped with the pain "for like two to three months and then it wore off." Garcia also told the jury that based on that experience, she believed future injections "will help" with the symptoms she was still experiencing.

Lautenschlager testified that Garcia's MRI reports showed abnormal straightening of the spine and herniated discs in both her neck and her lower back. He noted that the symptoms she described were consistent with the MRI reports. As noted above, he testified that because Garcia's symptoms had not resolved by the time of his testimony, they were unlikely to resolve on their own and would likely persist "for quite sometime." *See Hulsey*, 2019 WL 3484082, at *9 (considering doctor's testimony that plaintiff's condition was "permanent, will not heal on its own, and is likely to worsen over time"). While he stated he could not "say for sure [Garcia's symptoms

would persist] the rest of her life," he also testified, as noted above, that he believed that outcome was likely to a reasonable degree of medical probability. As support for this opinion, he explained that some of his pain management patients had been receiving treatment "for 10, 15 years. So it could be a substantial long time." *See Bill Miller Bar-B-Q*, 2005 WL 2176079, at *2 (doctor's testimony about "what 'the patient' will need, without specifically stating that his recommendation was specific to" plaintiff, was sufficient to support finding that future medical treatment was necessary). He testified that Garcia reported "about 40 percent pain relief" from the epidural injections, but he also noted the injections would not "fix the issue" or "change the pathology" that caused Garcia's symptoms but were instead "a pain control type of procedure" to decrease those symptoms.

The billing records admitted at trial showed that when Garcia received epidural injections in 2019 and 2020, those treatments cost $4,050 and $3,935 per injection, respectively, plus an additional $1,200 for anesthesia.[1] Lautenschlager did not know what similar injections cost at the time of his testimony, but he agreed any future injections would likely cost the same as or more than the first two. *See Perez v. Williams*, No. 02-21-00395-CV, 2022 WL 17351581, at *9–10 (Tex. App.—Fort Worth Dec. 1., 2022, no pet.) (mem. op.) (considering cost of past medical expenses in reviewing award of future medical expenses); *Bill Miller Bar-B-Q*, 2005 WL 2176079, at *3 (same).[2] Based on the cost of the first two injections, the jury's finding of $160,000 for future

---

[1] Lautenschlager testified that he used different steroids for the December 2019 and January 2020 injections "because [Garcia] got less than 50 percent pain relief with the [December 2019] one[.]"

[2] Simpson appears to contend that Garcia failed to establish the reasonableness of the cost of her future medical expenses. However, under Garcia's theory, in the future, she would continue the medical treatment she received in the past. Here, Simpson has not challenged the reasonableness of Garcia's past medical expenses or the jury's finding that Garcia was entitled to recover those expenses. We note, moreover, that the billing records listing the costs of the 2019 and 2020 injections were admitted by agreement at trial. This record does not support a reversal or reduction of Garcia's future medical expenses on reasonableness grounds. *See Perez*, 2022 WL 17351581, at *9–10; *cf. McDaniel v. Dindy*, 673 S.W.3d 24, 42 (Tex. App.—Fort Worth 2023, no pet.) (reversing award of future medical damages "[b]ecause there was no probative evidence of reasonable costs of either past or future medical expenses from which the jury could make an assessment of reasonable future medical expenses").

medical expenses is equal to the cost of four injections a year for approximately eight years. *See Vast Constr.*, 526 S.W.3d at 723 ("There is no requirement that the evidence show precisely how the jury arrived at the specific amount awarded."). That finding is consistent with Garcia's testimony that the injections alleviated her symptoms for two or three months at a time—i.e., roughly one-quarter of a year—and Lautenschlager's testimony that Garcia's symptoms would likely persist for "a substantial long time." *See Perez*, 2022 WL 17351581, at *9–10 (affirming award of future medical expenses where plaintiff and her treating physician testified about "the 'lifelong' nature of her injuries").

When viewed in the light most favorable to the judgment, the evidence presented at trial constituted more than a scintilla of evidence of both the necessity and the reasonable cost of Garcia's future medical care. *See id.*; *Bill Miller Bar-B-Q*, 2005 WL 2176079, at *2. The evidence was therefore legally sufficient to support the judgment as to future medical expenses.

B.     Factual sufficiency

As Simpson notes, the evidence showed that Garcia last visited Lautenschlager's pain management clinic in June of 2020, approximately two years before trial, and her most recent epidural injection was in January of 2020. Additionally, Garcia's medical records showed that during her June 2020 examination, she reported she was sleeping well and experiencing "mild" pain that improved with medication. As explained above, however, Garcia testified that at the time of trial, her pain was significant enough to affect her day-to-day activities. Additionally, she testified she stopped visiting the pain management clinic not because her symptoms had subsided, but because she could not afford her treatment. Lautenschlager confirmed that the cost of medical care can present a barrier for some patients. With regard to Garcia specifically, he further testified "she was pushed out a little bit" when his office shifted to telemedicine during the height of the COVID-19 pandemic. He added, however, that "she was being actively treated during that point

even though she couldn't get injections," and he noted she had attempted "to coordinate some low back injections" in February of 2021 "but [those injections] didn't occur."

To the extent that the testimony described above raised conflicts about Garcia's need for future medical care, the jury had the authority to resolve those conflicts. *See, e.g.*, *In re Est. of Matthews*, 510 S.W.3d 106, 117 (Tex. App.—San Antonio 2016, pet. denied); *see also Griggs v. Cohen*, No. 05-19-01174-CV, 2020 WL 6128225, at *3 (Tex. App.—Dallas Oct. 19, 2020, no pet.) (mem. op.) (affirming award of future medical expenses after recognizing that "some evidence weighs against the jury's finding"). Additionally, the evidence that conflicted with the trial court's judgment was not so overwhelming as to render the judgment clearly wrong and unjust. *See Abrams*, 467 S.W.3d at 614. The evidence was therefore factually sufficient to support the judgment as to future medical expenses. *See Saeco*, 392 S.W.3d at 808–09.

Because the evidence was both legally and factually sufficient to support the award of $160,000 in future medical expenses, we overrule Simpson's second issue.

### *Remittitur*

In her third issue, Simpson argues that if we determine the evidence supports at least some damages for future medical expenses, we should suggest a remittitur. *See* Tex. R. App. P. 46.3. As support for this request, Simpson notes, "The jury found, and [Garcia] does not contest, that [Garcia] will suffer zero physical pain in the future."

To the extent Simpson argues the jury's finding on future medical expenses fatally conflicts with its finding on future pain, we agree with Garcia that she waived this issue by failing to object to the purported conflict before the trial court discharged the jury. *See* Tex. R. Civ. P. 295; *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 518 (Tex. 2018). In any event, because we have concluded the evidence was factually sufficient to support the full amount of the award for future

medical expenses, there is no basis upon which to suggest a remittitur. *See Geis v. Colina Del Rio, LP*, 362 S.W.3d 100, 115 (Tex. App.—San Antonio 2011, pet. denied).

We overrule Simpson's third issue.

## CONCLUSION

We affirm the trial court's judgment.

Beth Watkins, Justice