**HARRIS COUNTY APPRAISAL DISTRICT, Appellant,**

v.

**UNITED INVESTORS REALTY TRUST, Appellee.**

No. 14–00–00374–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 12, 2001.

Rehearing Overruled June 14, 2001.

Robert P. McConnell, Houston, for appellants.

James Popp, William Ikard, Austin, for appellees.

Panel consists of Justices YATES, ANDERSON, and FOWLER.

## OPINION

FOWLER, Justice.

This is a property tax appraisal case involving alleged unequal taxation of commercial property. The Harris County Appraisal District ("HCAD") appeals the trial court's judgment in favor of the property owner, United Investors Realty Trust ("United Investors"), and presents two issues for review: (1) in applying section 42.26(d) of the Texas Tax Code, did the trial court improperly ignore the property's market value and consider only that the property was allegedly appraised unequally with comparable properties appropriately adjusted; and (2) contingent upon prevailing on the first issue, was it error to award attorneys' fees to United Investors? We affirm the judgment of the trial court.

## FACTUAL BACKGROUND

United Investors purchased Mason Park Centre on January 28, 1998, for $15,200,000.00. Mason Park Centre is a neighborhood shopping center located on Mason Road in Houston, Harris County, Texas. It contains 163,278 square feet of rentable area.

HCAD appraised Mason Park Centre at $13,900,000.00 for the tax year of 1998. United Investors protested this assessment to the Appraisal Review Board ("ARB") under section 41.44[1] of the Tax Code. The ARB upheld HCAD's appraisal.

---

1. In relevant part, section 41.44, entitled "Notice of Protest," provides that "to be entitled to a hearing and determination of a protest, the property owner initiating the protest must [timely] file a [sufficient] written notice of the protest with the appraisal review board hav- ing authority to hear the matter protested, or show good cause for failure to timely file such notice." TEX. TAX CODE ANN. § 41.44 (Vernon Supp.2000). Giving sufficient notice under this section entitles a property owner to a hearing and determination of the protest. *Id.*

Then, pursuant to section 42.21[2] of the Tax Code, United Investors filed a timely appeal to the district court.[3]

United Investors argued to the district court that it was entitled to relief for the 1998 tax year pursuant to section 42.26(d) of the Tax Code because HCAD's appraised value for Mason Park Centre was unequal to the appraised values of several comparable properties. Section 42.26(d), which became effective on January 1, 1998, provides that "The district court shall grant relief on the ground that a property is appraised unequally if the appraised value of the property exceeds the median appraised value of a reasonable number of comparable properties appropriately adjusted." TEX. TAX CODE ANN. § 42.26(d) (Vernon Supp.2000).

At trial, United Investors called Ron Little, who was qualified as an expert valuation witness. He testified that HCAD appraised Mason Park Centre at $85.13 per square foot. In contrast, the median appraised value of a reasonable number of comparable properties appropriately adjusted[4] was $62.71 per square foot. He argued that this discrepancy entitled United Investors to relief under section 42.26(d). By multiplying $62.71 by the square feet of Mason Park Centre, Little

determined that the appropriate appraised value for the property in question in the 1998 tax year was $10,239,163.00.

Little also testified that he did not make a determination of Mason Park Centre's market value, did not consider market value, and did not compare Mason Park Centre's market value to the market value of any of its comparables. In short, in his analysis, Little did not make any independent findings of market value.[5] Nevertheless, Little did testify that he compared appraised values as prepared by HCAD. The Tax Code requires that "all taxable property is appraised at its market value as of January 1 [of the tax year.]" TEX. TAX CODE ANN. § 23.01(a) (Vernon Supp. 2000). Thus, when Little compared appraised values, he compared, HCAD's determination of market value.

The district court determined that United Investors' interpretation and application of section 42.26(d) was correct, and rendered judgment in favor of United Investors. In so doing, the district court found that the proper appraised value for Mason Park Centre was $10,239,163.00, as Little had calculated. It also awarded reasonable statutory attorneys' fees to United Investors in the amount of $12,650.00, pursuant to Section 42.29(a) of the Tax Code.

**2.** Generally, section 42.21 requires a party who appeals an order of the ARB to timely file a petition for review with the district court. TEX. TAX CODE ANN. § 42.21(a) (Vernon Supp.2000).

**3.** Neither party disputes that United Investors exhausted its administrative remedies.

**4.** Little testified that, in order to appropriately adjust the properties' appraised values, he made adjustments downward and upward based on location, closeness to traffic volume, age, depreciation from cost schedules, and access to the shopping center. For instance, if the comparable property was older than the subject property, Little would make an upward adjustment to the comparable proper-

ty's appraised value, to compensate for the comparable property's age. Little determined what would be a reasonable number of comparable properties, in this case 7, based on characteristics which would tend to most influence value, like location, age, and physical characteristics.

**5.** The trial court held as much in its written conclusions of law. It stated, "The methodology employed by Plaintiff results in a tax value that is not based upon or [sic] has any relationship to the reasonable market value of the subject property." However, we interpret this to mean that the tax value the court determined United Investors should pay is at a rate which is less than market value.

Tex. Tax Code Ann. § 42.29(a) (Vernon Supp.2000).

On appeal, HCAD argues that the trial court erred in entering judgment in favor of United Investors, and therefore United Investors would not be entitled to attorneys' fees. In support of this argument, HCAD contends that the trial court's taxable value is neither based on market value, nor bears any relationship to market value, thus contravening Article VIII, sections 1(a) and (b) of the Texas Constitution.

## DISCUSSION AND HOLDINGS

On appeal, HCAD argues that if Article VIII, sections 1(a) and (b) of the Texas Constitution require ad valorem appraisals to be equal, uniform, and based upon reasonable market value, either the trial court has applied section 42.26(d) of the Tax Code in an unconstitutional manner, or section 42.26(d) is, itself, unconstitutional. However, HCAD stated that it is not challenging the constitutionality of section 42.26(d). Rather, it argues that, in order to establish inequality, section 42.26(d) should be interpreted as requiring comparisons of appraised values to actual market value. As we explain below, we do not adopt such an interpretation.

▮▮▮ In construing a statute, our primary goals are to ascertain the Legislature's intent in enacting it, and give effect to that intent. *In re the County of Jim Wells,* 44 Tex. Sup.Ct. J. 407, 2000 WL 33146426, at *2 (Tex. Feb. 1, 2001). When a statute is clear and unambiguous, we need not resort to rules of statutory construction to construe it. *Id.* However, we may still consider a statute's legislative history, the consequences of a particular construction, and the statute's objectives, among other things. *Id.*

▮▮▮ We start with the presumption that this statute is constitutional. *HL Farm Corp. v. Self,* 877 S.W.2d 288, 290 (Tex.1994). We are to assess a statute in light of the relevant, and controlling constitutional provisions. *State v. Shoppers World, Inc.,* 380 S.W.2d 107 (Tex.1964); *Duncan v. Gabler,* 147 Tex. 229, 215 S.W.2d 155 (1948); *Earle v. Program Centers,* 670 S.W.2d 777, 779–80 (Tex.App.— Fort Worth 1984, no writ). Also, in construing a statute's constitutionality, we presume that the Legislature did not act unreasonably, arbitrarily, or intend an unjust or absurd result. *Barshop v. Medina County Underground Water Conservation Dist.,* 925 S.W.2d 618, 629 (Tex.1996).

▮▮ HCAD's primary argument is that the valuation method used by United Investors and the trial court is unlawful because it does not take into account Mason Park Centre's market value. In making this argument, HCAD cites to Article VIII, section 1 of the Texas Constitution, and section 42.26(a) through (d) of the Tax Code. The relevant provisions of the Texas Constitution state,

a. Taxation shall be equal and uniform.

b. All real property and tangible personal property in this State, unless exempt as required or permitted by this Constitution, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law.

Tex. Const. art. VIII, § 1(a) & (b). The provisions of the Tax Code which HCAD relies on are,

(a) The district court shall grant relief on the ground that a property is appraised unequally if the appraisal ratio of the property exceeds by at least 10 percent the median level of appraisal of:

(1) a reasonable and representative sample of other properties in the appraisal district; or

(2) a sample of properties in the appraisal district consisting of a reasonable number of other properties similarly situated to, or of the same general kind or character as, the property subject to the appeal.

(b) If a property owner is entitled to relief under Subsection (a)(1), the court shall order the property's appraised value changed to the value as calculated on the basis of the median level of appraisal according to Subsection (a)(1). If a property owner is entitled to relief under Subsection (a)(2), the court shall order the property's appraised value changed to the value calculated on the basis of the median level of appraisal according to Subsection (a)(2). If a property owner is entitled to relief under both Subsection (a)(1) and Subsection (a)(2), the court shall order the property's appraised value changed to the value calculated on the basis of the median level of appraisal that results in the lower appraised value. The court shall determine each applicable median level of appraisal according to law, and is not required to adopt the median level of appraisal proposed by a party to the appeal. The court may not limit or deny relief to the property owner entitled to relief under a subdivision of Subsection (a) because the appraised value determined according to the other subdivision of subsection (a) results in a higher appraised value.

(c) For purposes of establishing the median level of appraisal under Subsection (a)(1), the median level of appraisal in the appraisal district as determined by the comptroller under Section 5.10 is admissible as evidence of the median level of appraisal of a reasonable and representative sample of properties in the appraisal district for the year of the comptroller's determination, subject to the Texas Rules of Evidence and the Texas Rules of Civil Procedure.

(d) The district court shall grant relief on the ground that a property is appraised unequally if the appraised value of the property exceeds the median appraised value of a reasonable number of comparable properties appropriately adjusted.

TEX. TAX CODE ANN. § 42.26(a)-(d) (Vernon Supp.2000).

Additionally, we note the following relevant Tax Code provisions: (1) " 'Appraised value' means the value determined as provided by Chapter 23 of this code." TEX. TAX CODE ANN. § 1.04(8) (Vernon Supp. 2000); (2) "except as required by this chapter, all taxable property is appraised at its market value as of January 1." TEX. TAX CODE ANN. § 23.01(a) (Vernon Supp. 2000); and (3) "appraisal ratio" is the numerical ratio achieved when dividing the property's appraised value by the property's market value. TEX. TAX CODE ANN. § 1.12(b) (Vernon Supp.2000).

■ Finally, we note that section 42.26(d), which was added to subsections (a) through (c) in 1997, was part of Senate Bill 841, also known as the Taxpayer's Bill of Rights. This bill was intended to facilitate tax remedies for property owners. Remedial statutes, such as section 42.26(d), should be given a liberal construction, rather than one that would defeat the very purpose for which it was enacted. *Burch v. City of San Antonio*, 518 S.W.2d 540, 544 (Tex.1975); *City of Mason v. West Tex. Utils. Co.*, 150 Tex. 18, 237 S.W.2d 273, 280 (1951).

In determining the Legislature's intent, we look first to the plain language of

42.26(a) and compare it to section 42.26(d). Prior to the Legislature's enactment of section 42.26(d), the statutory means for a taxpayer to seek relief in district court were found in section 42.26(a). Section 42.26(a) requires a taxpayer to obtain an independent appraisal of the market value of a representative sample of other properties in the appraised district, or a sample of other properties that are similarly situated, or of the same general character as the property at issue. Unlike section 42.26(a), subsection (d) does not contain a requirement of independent appraisals of all or some of the property in the district. TEX. TAX CODE ANN. § 42.26 (Vernon Supp. 2000). Consequently, the plain language of section 42.26(d) dispenses with the requirement of an independent appraisal. It requires only a comparison of the appraised value of the property at issue with "comparable properties appropriately adjusted." *Id.* at § 42.26(d).

For several reasons, we feel confident that our interpretation that subsection (d) dispenses with a requirement of an independent appraisal gives effect to the Legislature's intent for subsection (d). First, if the Legislature had intended for "appropriately adjusted"—or any other phrase in subsection (d)—to be a reference to "appraisal ratio" (which would require an independent appraisal), it could easily have said so. When it enacted subsection (d), the Legislature was very familiar with the phrase "appraisal ratio" since, fifteen years earlier, it had put the language in subsection (a) of section 42.26.

Second, if we were to read subsection (d) to require an independent appraisal, the only real difference between subsection (a) and subsection (d) would be that subsection (a) would require a 10 per cent difference in values, whereas subsection (d) would require a difference of less than 10 percent (subsection (d) only requires that the appraised values of the property "exceed" the median appraised values of the other properties). If the Legislature wanted only to lower the difference in values below 10 per cent, and it did not intend to offer the taxpayer a different method of proving inequality of valuation, it could easily have done so by amending subsection (a). There would have been no need to add subsection (d).

Third, the argument has been made here that subsection (d) was enacted to give taxpayers a cheaper way of proving inequality of taxation than having to obtain an independent appraisal of a reasonable sample of similarly situated properties. Although the statute has no legislative history explaining why the legislature enacted subsection (d), the Legislature enacted Senate Bill 841, of which subsection (d) was a part, to facilitate tax remedies for property owners. Interpreting subsection (d) as we have is consistent with the purpose of Senate Bill 841; interpreting it as HCAD argues would be inconsistent with the purpose of Senate Bill 841. Common sense dictates it is easier to prepare a protest by merely comparing the appraised values—found on the tax roles—of comparable properties appropriately adjusted than to obtain an independent appraisal of the market value of comparable properties. In one case, the tax roles can be used to determine value; the only independent analysis required is in adjusting the appraised values to put the properties on equal footing. In the other case, independent analysis is required for every aspect of the protest. Clearly, subsection (d), as we have interpreted it, facilitates proof of inequity and therefore facilitates tax remedies for property owners.

In short, the plain language of the statute requires us to hold that subsection (d) allows a protest without proof of the market value of the comparable properties.

Having reached this conclusion, we turn now to address HCAD's claim that the trial court's application of subsection (d), and our interpretation of it, are unconstitutional because we have ignored market value of the properties. As to the trial court, HCAD points to the fact that United Investors did not introduce the market value of Mason Park Centre or any of the comparable properties. According to HCAD, this violates the requirement in Article VIII, section 1(b) that all properties be taxed in proportion to their values. We find no error. By statute, appraised value is market value. TEX. TAX CODE ANN. § 23.01(a) (Vernon Supp.2000). Our record contains no evidence that any of these properties were appraised at an amount other than market value; consequently, we must assume that the appraised values were market value. *See Whelan v. State,* 155 Tex. 14, 282 S.W.2d 378 (Tex.1955); *Rowland v. City of Tyler,* 5 S.W.2d 756 (Tex. Comm'n App.1928, holding approved); *Sierra Blanca Ind. Sch. Dist. v. Sierra Blanca Corp.,* 514 S.W.2d 782, 785–86 (Tex.Civ.App.—El Paso 1974, writ ref'd n.r.e.); *Dietrich v. Phipps,* 438 S.W.2d 900 (Tex.Civ.App.—Houston [1st Dist.] 1969, no writ).

■ As to our conclusion that an independent appraisal of market value is not required, HCAD's argument again is misplaced. HCAD is arguing, in essence, that the taxation of property in proportion to its market value (*see* TEX. CONST. art. VIII, § 1(b)) carries greater constitutional weight than the concept of equal and uniform taxation (*see id.* at § 1(a)). This question has not been addressed in Texas. However, other jurisdictions, including the United States Supreme Court, have addressed it. *Sioux City Bridge Co. v. Dakota County, Neb.,* 260 U.S. 441, 443–44, 43 S.Ct. 190, 67 L.Ed. 340; *Hanks v. State Bd. of Equalization,* 229 Cal.App.2d 427,

40 Cal.Rptr. 478, 480 (1964); *Addington v. Board of County Comm'rs,* 191 Kan. 528, 382 P.2d 315, 318 (1963); *Coomey v. Board of Assessors of Sandwich,* 367 Mass. 836, 329 N.E.2d 117, 119 (1975); *Knox v. Southern Paper, Co.,* 143 Miss. 870, 108 So. 288, 290 (1926); *Department of Revenue v. State Tax Appeal Bd.,* 188 Mont. 244, 613 P.2d 691, 693 (1980); *Washington County Nat'l Bank v. Washington County, Va.,* 176 Va. 216, 10 S.E.2d 515, 516 (1940). These jurisdictions have held that when there is a clash between taxation at market value and equal and uniform taxation, equality and uniformity prevails. *Id.* We hold, as do these cases, that it is unfair, and constitutionally prohibited, to require one taxpayer to pay a tax based on market values if other taxpayers are paying a rate that is lower than the market value of their properties. If we were to allow this, one landowner would be paying property taxes disproportionately to other landowners. The constitution expressly prohibits this. TEX. CONST . art. VIII, § 1(a). If a conflict exists between taxation at market value and equal and uniform taxation, equal and uniform taxation must prevail.

■ Turning to the evidence submitted at trial, the appraised values of the seven properties that Little used to determine the median appraised value ranged from $47.99 to $88.63 per square foot. The median appraised value per square foot was $62.71. In contrast, the appraised value per square foot of Mason Park Centre was $85.13. Clearly this amount exceeded the median appraised value. Under section 42.26(d), when this situation occurs, the district court shall grant relief. TEX. TAX CODE ANN. § 42.26(d) (Vernon Supp.2000). Here, the trial court granted relief by putting the appraised value at $62.71. There was sufficient evidence to support this evaluation; therefore, the trial court did not err in granting relief to

United Investors. We overrule HCAD's first issue for review.

HCAD's second issue, being conditioned upon HCAD's prevailing on the first issue, is moot.

Having overruled both issues, the judgment of the trial court is affirmed.