# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-17-00735-CV

In re Catherine Tower, LLC

ORIGINAL PROCEEDING FROM TRAVIS COUNTY

# O P I N I O N

A Texas property taxpayer has invoked its right, conferred on all such persons by the 1997 "Texas Taxpayer Bill of Rights,"[1] to challenge the tax appraisal of its property by comparison to "the median appraised value of a reasonable number of comparable properties appropriately adjusted," first before the local appraisal review board, then in district court.[2] The litigation tactics of the local appraisal district ultimately yielded orders from the district court compelling production to the district, over the taxpayer's objections, and constrained only by a protective order limiting dissemination to third parties, of the entirety of a third-party financing appraisal of the taxpayer's property. This financing appraisal is over 200 pages in length and contains extensive financial and business information regarding the property and the taxpayer—matters that a taxpayer, at

---

[1] *See* Act of May 25, 1997, 75th Leg., R.S., ch. 1039, §§ 37, 42, 1997 Tex. Gen. Laws 3897, 3915–17.

[2] *See* Tex. Tax Code §§ 41.43(b)(3) (providing this standard in protest proceedings before appraisal review board), 42.26(a)(3) (parallel provision in suit for judicial review of appraisal review board's ruling on protest).

least in Texas, would ordinarily have no duty to disclose to an appraisal district or any other organ of government.

The taxpayer seeks mandamus relief from the district court's order, urging among other objections brought forward that the discovery at issue is irrelevant to, and not reasonably calculated to lead to the discovery of admissible evidence regarding, the type of unequal-appraisal remedy it is seeking. We agree that mandamus relief is warranted.

The taxpayer and relator is Catherine Tower, LLC, which in April 2016 acquired a high-rise apartment complex, commonly known as "The Catherine," located on Barton Springs Road in Austin. This location is in Travis County, and is thus within the jurisdiction of the Travis Central Appraisal District (TCAD), the real party in interest.[3] TCAD subsequently appraised the property's value for the 2016 tax year in excess of $134 million. Catherine timely protested this proposed valuation to the local appraisal review board, was rejected, and then appealed the board's order through suit in district court.[4] In its suit, Catherine has relied solely on the ground of "unequal appraisal"—i.e., that TCAD discriminated against it relative to other taxpayers[5]—as determined through the previously described comparison to "the median appraised value of a reasonable number

---

[3] *See id.* §§ 6.01–.02 (establishing appraisal district in, and with boundaries coextensive with, each county).

[4] *See id*. §§ 42.01, .21. Catherine Tower also prays for the attorney's fees authorized if it prevails. *See id*. § 42.29.

[5] *See* Tex. Const. art. VIII, § 1(a) ("Taxation shall be equal and uniform."); Tex. Tax Code §§ 41.41(a)(2) (providing that grounds for protest before appraisal review board include "unequal appraisal of the owner's property"), .43(b) (prescribing procedures and standards for determining protests before board, including "on the ground of unequal appraisal of property"); *id*. §§ 42.24, .26 (prescribing procedures and remedies in district court in regard to "inequality" in or "unequal" appraisal of property).

2

of comparable properties appropriately adjusted." This is the standard or means of establishing unequal appraisal in district court that the Legislature authorized through Tax Code Section 42.26(a)(3),[6] and is the counterpart to Tax Code Section 41.43(b)(3), which applies in the underlying administrative proceedings before the appraisal review board.[7]

Catherine had financed its purchase of the property through a loan obtained from a financial-services arm of Prudential Insurance Company, secured by a deed of trust for Prudential's benefit that was recorded in the Travis County real property records. Evidently uncovering that filing, TCAD served notice in the litigation of its intent to take a deposition on written questions from Prudential, accompanied by a request for production of documents calculated to secure any analyses of the property's value that had been prepared or obtained in connection with the loan.[8] The document request called for "[a]ny appraisals, valuations or estimates of value performed in connection with the loan by [Prudential] to Catherine Tower," and cited an attached copy of the recorded deed of trust. In fact, Catherine had been required to commission an appraisal of the property in connection with Prudential's loan, and the undertaking generated an elaborate and

---

[6] *See* Tex. Tax Code § 42.26(a)(3) ("The district court shall grant relief on the ground that a property is appraised unequally if . . . the appraised value of the property exceeds the median appraised value of a reasonable number of comparable properties appropriately adjusted.").

[7] *See id*. § 41.43(b)(3) ("A protest on the ground of unequal appraisal of property shall be determined in favor of the protesting party unless the appraisal district establishes that . . . the appraised value of the property is equal to or less than the median appraised value of a reasonable number of comparable properties appropriately adjusted.").

[8] *See* Tex. R. Civ. P. 199.2(b)(5), 200.1, 205. The mandamus record reflects that TCAD also attempted to seek similar valuation-related documents or information directly from Catherine —including the closing statement reflecting the sale price Catherine had paid. However, the present mandamus proceeding concerns only TCAD's discovery requests aimed at Prudential.

3

lengthy analysis of the property's value, taking account of, in Catherine's words, "confidential financial and budgeting projections—such as tenant names, addresses, balances owed, and lease terms; company financial health; and company financial projects and performance information."

To simplify the material portions of a complicated ensuing procedural history, Catherine preserved objections that the document request exceeded the permissible scope of discovery by seeking information that was neither relevant to an unequal-appraisal claim brought under Tax Code Section 42.26(a)(3), nor reasonably calculated to lead to admissible evidence. The district court signed a series of orders having the ultimate effect, as indicated, of requiring production of the entire Prudential financing appraisal to TCAD, limited only by a protective order restricting dissemination beyond the parties, court, and witnesses.

"A discovery order that compels production beyond the rules of procedure is an abuse of discretion for which mandamus is the proper remedy."[9] "Our procedural rules define the general scope of discovery as any unprivileged information that is relevant to the subject of the action, even though it would be inadmissible at trial, as long as the information sought is 'reasonably calculated to lead to the discovery of admissible evidence.'"[10] "The phrase 'relevant to the subject matter' is

---

[9] *In re National Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding) (per curiam) (citing *In re Deere & Co.*, 299 S.W.3d 819, 820 (Tex. 2009) (orig. proceeding) (per curiam); *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (per curiam)).

[10] *In re National Lloyds Ins. Co.*, 507 S.W.3d 219, 223 (Tex. 2016) (orig. proceeding) (quoting *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam); Tex. R. Civ. P. 192.3(a)); *see also In re National Lloyds Ins. Co.*, 532 S.W.3d 794, 808 (Tex. 2017) (orig. proceeding) ("The discovery guideposts [under the rules] can be summarized as follows: [1] only relevant evidence is discoverable; [2] relevant evidence that is privileged is not discoverable; [3] relevant evidence that is not privileged is discoverable when (i) it is admissible or (ii) it is inadmissible but reasonably calculated to lead to the discovery of admissible evidence . . . .").

4

to be broadly construed," but "even these liberal bounds have limits." "Evidence is relevant if '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'"[11] Thus, "[a]lthough the scope of discovery is broad, a request for information 'must show a reasonable expectation of obtaining information that will aid the dispute's resolution.'"[12] Likewise, discovery requests must be "reasonably tailored to include only matters relevant to the case"—i.e., they "must not be overbroad"—and such a flaw renders requests improper independently from whether they are also burdensome or harassing.[13]

Catherine disputes that the Prudential financing appraisal is relevant to its action under Section 42.26(a)(3) or that TCAD's request is otherwise reasonably tailored to seek relevant or admissible information. TCAD insists that its discovery request is "narrowly tailored" in seeking the entirety of the Prudential financing appraisal. The parties' competing views of the discovery reflect underlying differences regarding the nature of an unequal-appraisal claim under Tax Code Section 42.26(a)(3) and specifically concerning the extent to which the inquiry there prescribed—whether "the appraised value of the property exceeds the median appraised value of a reasonable number of comparable properties appropriately adjusted"[14]—entails independent consideration of the subject property's "market value" (with both parties using the term in its

---

[11] *In re National Lloyds Ins. Co.*, 532 S.W.3d at 808 (quoting Tex. R. Evid. 401).

[12] *Id*. (quoting *In re CSX Corp.*, 124 S.W.3d at 152).

[13] *In re National Lloyds Ins. Co.*, 449 S.W.3d at 488 (citing *In re Allstate Cty. Mut. Ins. Co.*, 227 S.W.3d 667, 669–70 (Tex. 2007) (orig. proceeding) (per curiam); *In re CSX Corp.*, 124 S.W.3d at 153; *Sanderson*, 898 S.W.2d at 815).

[14] Tex. Tax Code § 42.26(a)(3).

conventional sense to denote the price the property would command in the marketplace between a willing and informed seller and willing and informed buyer).[15] Resolution of this underlying question impacts the discovery issue because the Prudential financing appraisal represents or includes an independent appraisal of the property's market value.

TCAD summarizes its position as follows:

> Relator filed suit to challenge the appraised value of its property pursuant to Chapter 42 of the Tax Code. Respondent sought discovery of an appraisal of Relator's property. An appraisal of the subject property is relevant to the appraised value of that property. The trial court, therefore, did not abuse its discretion in allowing discovery that is relevant and material to the central issue in the case.[16]

TCAD elaborates that "an assessment of a property's appraised value under Section 42.26(a)(3) is an assessment of its market value." This is so, TCAD explains, because "[b]y constitutional and statutory law, 'appraised value' is an appraisal of 'market value.'" TCAD grounds this view in the Texas Constitution's requirement in Article VIII, Section 1(a), that "[t]axation shall be equal and uniform" and the ensuing, more specific requirement in 1(b) that "property . . . shall be taxed in

---

[15] *See id.* § 1.04(7) (defining "market value" as "the price at which a property would transfer for cash or its equivalents under prevailing market conditions" if "exposed for sale in the open market with a reasonable time for the seller to find a purchaser," both seller and purchaser are fully informed, and both "seek to maximize their gains and neither is in a position to take advantage of the exigencies of the other"); *EXLP Leasing, LLC v. Galveston Cent. Appraisal Dist.*, ___ S.W.3d ___, ___, No. 15-0683, 2018 Tex. LEXIS 185, *7–10 (Tex. Mar. 2, 2018) (discussing similar "market value" definition from case law: "'the price the property would bring when it is offered for sale by one who desires, but is not obligated to sell, and is bought by one who is under no necessity of buying'" (quoting *City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 187 (Tex. 2001))); *fair market value*, *Black's Law Dictionary* (10th ed. 2014) (defining the term as "the price that a seller is wiling to accept and a buyer is willing to pay on the open market and in an arm's-length transaction").

[16] Internal citation omitted.

6

proportion to its value, which shall be ascertained as provided by law." As TCAD observes, the Texas Supreme Court has determined that the Article VIII provisions following 1(a)'s Equal and Uniform Clause are "examples" of "equal and uniform" taxation, such that "[a] property tax is equal and uniform only if it is in proportion to property value" and complies with 1(b).[17] And a property's "value" under 1(b), TCAD insists, is *market* value, pointing to a 1996 Texas Supreme Court decision in which the court stated that "our Constitution requires 'value' for ad valorem tax purposes to be based on the reasonable market value of the property."[18] The Tax Code effectuates this same understanding, TCAD further urges, by requiring in Chapter 23 that "all taxable property is appraised at its market value as of January 1,"[19] taking account of "the individual characteristics that affect the property's market value and all available evidence that is specific to the value of the property."[20] From these propositions TCAD deduces that a dispute about a property's appraised value, including one under Section 42.26(a)(3), concerns the property's market value, making relevant—and opening the door to discovery of—independent assessments of market value, "market data," or other "evidence concerning factors that affect market value," such as the Prudential financing appraisal.

The Texas Supreme Court—subsequent to the district court's discovery ruling here—dismantled the logical underpinnings of TCAD's argument. *EXLP Leasing, LLC v. Galveston*

---

[17] *In re Nestle USA, Inc.*, 387 S.W.3d 610, 620 (Tex. 2012) (orig. proceeding).

[18] *Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931, 935 (Tex. 1996) (citing *Whelan v. State*, 282 S.W.2d 378, 380 (Tex. 1955)).

[19] Tex. Tax Code § 23.01(a); *see also id*. § 1.04(7) (defining "market value" as previously noted), (8) (defining "appraised value" as "the value determined as provided by Chapter 23 of this code").

[20] *Id*. § 23.01(b).

*Central Appraisal District*[21] in pertinent part involved a constitutional challenge brought by the appraisal district to a specialized formula imposed under Tax Code Chapter 23 for appraising the taxable value of certain heavy equipment.[22] The formula had the effect of reducing the equipment's appraised value to what the appraisal district decried as "a minute fraction" of its market value.[23] This reduction, the appraisal district asserted, violated Article VIII, Section 1(a)'s requirement of "equal and uniform" taxation and 1(b)'s requirement that property be taxed "in proportion to its value."[24] This was so, the district reasoned, because the property "value" referenced there means *market* value, in essence constitutionalizing market value as the basis for appraisal and not merely as a cap.[25] The Texas Supreme Court rejected that notion:

> Nothing in the constitution . . . binds the legislature to tax only on "market value" as so defined. The constitution refers only to the legislature's authority to set the "value" of property for taxation. It sets no requirement that "value" must approximate "market value." In fact, section 1(b) does not mention "market value" at all. Instead, the constitution assigns to the legislature the task of determining

---

[21]   ___ S.W.3d ___, 2018 Tex. LEXIS 185.

[22]   *See id.* at *3–4 (citing Tex. Tax Code § 23.1241(b)).

[23]   *See id.* at *8.

[24]   *See id.* at *8–9.

[25]   *See id.*; *cf.* Tex. Const. art. VIII, § 20 ("No property of any kind in this State shall ever be assessed for ad valorem taxes at a greater value than its fair cash market value . . . ."). The appraisal district's challenge was thus similar to the constitutional challenge to Tax Code Sections 41.43(b)(3) and 42.26(a)(3) that the City of Austin attempted to raise in its recent suit against TCAD. *See City of Austin v. Travis Cent. Appraisal Dist.*, 506 S.W.3d 607, 611 (Tex. App.—Austin 2016, no pet.) (summarizing City's allegations "that the challenged Tax Code provisions 'have incentivized taxpayer protests and led to widespread diminution of appraised property values to a 'median value' that is below market value,'" which in the City's view "'ha[d] resulted in unequal taxation in violation of the Texas Constitution'" (quoting the City's amended pleadings)).

"value," providing that it "shall be ascertained as may be provided by law." This provision, would seem to leave the Legislature free to adopt the mode of ascertaining the value of any class of property by such method as it might deem best.[26]

Nor had it ever held otherwise, the supreme court asserted, distinguishing a number of its prior decisions that the district, similar to TCAD here, had touted as precedent for a constitutional linkage of "value" to market value.[27]

The supreme court similarly rejected an argument by the appraisal district that its constitutional construction had been "codified" into the Tax Code. While acknowledging that "the tax code is built on the foundation of taxing property at market value," the court observed that the Code's use of "market value" did not uniformly denote the conventional meaning of the price a willing buyer would pay a willing seller:

> Viewing tax code chapter 23 as a whole, the legislature clearly chose a single label—"market value"—as a catch-all reference to the taxable value produced through application of the code's rules. Exactly what "market value" means for taxation purposes depends on the circumstances at hand and the rules the legislature prescribed for them. The tax code has not "codified" a single understanding of market value as the price a willing buyer would pay a willing seller. Rather, the term encompasses a variety of ways to determine taxable value.[28]

---

[26] *EXLP Leasing, LLC*, 2018 Tex. LEXIS 185, at *8–9 (internal citations and some quotation marks omitted).

[27] *See id*. at *15–16 (distinguishing, among other cases, *Enron Corp*., 922 S.W.2d at 935, as "not a case construing constitutional 'value,' nor . . . any dispute . . . whether valuation of the property at issue was market-value based").

[28] *Id*. at *12 (citing *Tarrant Appraisal Dist. v. Colonial Country Club*, 767 S.W.2d 230, 234 (Tex. App.—Fort Worth 1989, writ denied)).

Guided by *EXLP*, we reject TCAD's premise that a dispute about a property's tax appraisal value automatically or inherently places the property's market value (in the sense of what a willing buyer would pay a willing seller) at issue and thereby permits broad discovery of market-value-related information. Nor does Section 42.26(a)(3), the specific basis for Catherine's appraisal challenge here, open that door so widely. Section 42.26(a)(3) states:

> (a) The district court shall grant relief on the ground that a property is appraised unequally if:
>
> . . .
>
> (3) the appraised value of the property exceeds the median appraised value of a reasonable number of comparable properties appropriately adjusted.[29]

The relief authorized by Section 42.26(a)(3), as Catherine correctly observes, does not hinge upon whether the subject property's appraisal is consonant with its market value. Rather, Section 42.26(a)(3) assumes whatever "appraised value" has been assigned by the appraisal district, regardless how derived or whether correctly or incorrectly determined under that measure. Section 42.26(a)(3) thus stands in contrast to a taxpayer's challenge to the underlying determination of the appraised value in itself, which is a separate ground that Catherine has not pursued in district court.[30]

Similarly, the analysis prescribed by Section 42.26(a)(3) does not independently

---

[29] *See* Tex. Tax Code § 42.26(a)(3).

[30] *See id*. § 41.41(a)(1) ("A property owner is entitled to protest . . . determination of the appraised value of the owner's property."); *cf. id*. § 41.41(a)(2) (allowing protest on separate ground of "unequal appraisal of the owner's property"). Catherine did challenge the underlying appraised value before the appraisal review board, however, alongside its unequal-appraisal challenge.

10

determine the market value of either the subject property or the comparison properties.[31] Essentially, one merely takes the appraised values of the subject property and of the comparison properties as "found on the tax rolls" and compares them, and "the only independent analysis required is adjusting the appraised values [of the comparison properties] to put the properties on equal footing."[32] Section 42.26(a)(3) thereby differs from—and represents a less burdensome alternative to—the other statutory means through which a taxpayer may establish an unequal-appraisal claim,[33] which would require independent appraisals.[34] And that is the very purpose of Section 42.26(a)(3), as Catherine

---

[31] *See Harris Cty. Appraisal Dist. v. United Inv'rs Realty Trust*, 47 S.W.3d 648, 651–53 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (reaching that conclusion under parallel predecessor statute).

[32] *Id*. at 653; *see also Weingarten Realty Inv'rs v. Harris Cty. Appraisal Dist*., 93 S.W.3d 280, 286 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (op. on reh'g) ("In order to perform the calculation under this statute, the appraisal expert determines a reasonable number of comparable properties[,] . . . takes the appraised value of those properties from the public record, and appropriately adjusts them to the subject property." (citing *United Inv'rs Realty Trust*, 47 S.W.3d at 654)).

[33] *See* Tex. Tax Code § 42.26(a)(1) (requiring relief if "the appraisal ratio of the property exceeds by at least 10 percent the median level of appraisal of a reasonable and representative sample of other properties in the appraisal district"), (2) (requiring relief if "the appraisal ratio of the property exceeds by at least 10 percent the median level of appraisal of a sample of properties in the appraisal district consisting of a reasonable number of other properties similarly situated to, or of the same general kind or character as, the property subject to the appeal"); *see also id*. § 1.12(b) (defining "appraisal ratio" as "the ratio of a property's appraised value as determined by the appraisal office or appraisal review board, as applicable, to: (1) the appraised value of the property according to law if the property qualifies for appraisal for tax purposes according to a standard other than market value; or (2) the market value of the property if Subdivision (1) of this subsection does not apply").

[34] *United Inv'rs Realty Trust*, 47 S.W.3d at 653 (observing that these other means "require[] a taxpayer to obtain an independent appraisal of the market value of a representative sample or other properties in the appraised district, or a sample of other properties that are similarly situated, or of the same general character as the property at issue"); *accord Harris Cty. Appraisal Dist. v. Houston 8th Wonder Prop., L.P.*, 395 S.W.3d 245, 251–52 (Tex. App.—Houston [1st Dist.] 2012, pet.

11

emphasizes. As this Court observed recently in another appeal involving TCAD, the Legislature added the language now codified in Section 42.26(a)(3), as well as that of the counterpart Section 41.43(b)(3), as components of the 1997 Texas Taxpayer Bill of Rights, an enactment having "the intention of facilitating tax remedies for property owners."[35]

If the information contained in the Prudential financing appraisal could have any potential relevance to Catherine's Section 42.26(a)(3) claim, it could only be in regard to "the only independent analysis required" under that provision,[36] identifying "comparable properties" and making "appropriate[] adjust[ments]."[37] Adjustments to the comparable properties are made, generally speaking, "according to factors that tend to influence value, such as location, age, depreciation, physical characteristics of the property, and 'economic factors.'"[38] Effective January 1, 2016, the Legislature amended the Tax Code to further specify that "[t]he selection of comparable properties and the application of appropriate adjustments for the determination of an appraised value of property by any person under Section 41.43(b)(3) or 42.26(a)(3) must be based

---

denied) (op. on reh'g) ("Although market value may not be necessary to a determination made pursuant to Tax Code section 42.26(a)(3), it is not irrelevant to a determination of appraisal value made pursuant to section 42.26(a)(1) & (2)," as "market value is an element of the calculation of 'appraisal ratio' that may be used to determine whether an appraisal is equal and uniform" under Section 42.26(a)(1) and (2).).

[35] *City of Austin*, 506 S.W.3d at 614 (citing *United Inv'rs Realty Trust*, 47 S.W.3d at 652); *see also United Inv'rs Realty Trust*, 47 S.W.3d at 652–53 (recounting this history).

[36] *United Inv'rs Realty Trust*, 47 S.W.3d at 653.

[37] *See* Tex. Tax Code § 42.26(a)(3).

[38] *Houston 8th Wonder Prop., L.P.*, 395 S.W.3d at 254 (quoting *In re MHCB (USA) Leasing & Fin. Corp.*, No. 01-06-00075-CV, 2006 Tex. App. LEXIS 3515, at *10 (Tex. App.—Houston [1st Dist.] Apr. 27, 2006, orig. proceeding) (mem. op.)).

on the application of generally accepted appraisal methods and techniques," with "adjustments . . . based on recognized methods and techniques that are necessary to produce a credible opinion."[39]

Acknowledging the potential relevance to adjustments, Catherine has urged in the alternative that TCAD is at most entitled to production of limited portions of the Prudential financing appraisal revealing the properties deemed comparable by the third-party appraiser and the factors this appraiser used in making adjustments to those properties. In fact, Catherine produced twenty-nine pages of redacted excerpts from the Prudential appraisal in which it purported to disclose that information, apparently in the belief that an interim ruling by the district court had required only this. But TCAD insists that it is entitled to the entirety of the Prudential financing appraisal, save only an agreed-upon redaction of the sale price Catherine paid for its property. Its reasoning is again unconvincing.

In attempting to justify its broad discovery demand, TCAD points to specific types of information that it seeks within the Prudential appraisal. It explains—without apparent acknowledgment of the production already made—that "[t]he bank's appraisal will contain a list of comparable properties that have been adjusted to account for differences reflected in the market between the subject property and its competitors." TCAD also emphasizes a 2006 memorandum opinion from a sister court that permitted limited discovery in a Section 42.26(a)(3) case concerning market value of a subject property and comparison properties, in the view that such information "could potentially be relevant" by illuminating the "price" of various required adjustments and was

---

[39] Act of May 23, 2015, 84th Leg., R.S., ch. 101, § 1, 2015 Tex. Gen. Laws 1101, 1101 (current version at Tex. Tax Code § 23.01(f)).

13

thus "not so irrelevant as to render it undiscoverable."[40] That case, *MHCB*, predates *EXLP*, and Catherine asserts that even the issuing court "has since distanced itself" from it. But setting any such concerns aside, *MHCB* would not support the deep dive into Catherine's financial and business information that TCAD attempts here. On the contrary, *MHCB* ultimately held that discovery requests probing into, e.g., the financing of the subject property and seeking "all documents that state an opinion of the value of some or all of" the property were irrelevant or otherwise beyond the proper scope of discovery.[41]

TCAD's arguments reveal its request to be, at best, vastly overbroad, a mere "fishing expedition." "A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information."[42] If TCAD perceives in good faith that Catherine may possess specific information not already produced that is relevant to the selection of comparable properties and the application of appropriate adjustments to those properties under Section 42.26(a)(3), then it should formulate requests that seek that specific information (subject, of course, to Catherine's right to raise further objections at that juncture regarding scope, or assertions of privilege). But the present request, to the effect of "hand over your entire financing appraisal," is "narrowly tailored" only if one credits TCAD's fallacious syllogism that an appraisal dispute under Section 42.26(a)(3) means that market value is at issue, exposing the taxpayer to intrusive discovery of "market data."

---

[40] *See In re MHCB (USA) Leasing & Fin. Corp.*, 2006 Tex. App. LEXIS 3515, at *12–13.

[41] *See id.* at *14–24.

[42] *In re CSX Corp.*, 124 S.W.3d at 153 (citing *In re American Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding) (per curiam)).

Further, we would echo the observation by Catherine that such broad-ranging discovery of market-value information in a Section 42.26(a)(3) claim thwarts the Legislature's intent underlying that provision. For one, it effectively conflates the Section 42.26(a)(3) remedy with the more onerous alternative means of proving unequal appraisal, if not also with a challenge to the underlying appraisal valuation. Worse, as Catherine urges, such discovery tends to undermine the Section 42.26(a)(3) remedy altogether. By threatening disclosure of sensitive financial information to taxing and other governmental authorities as a price of invoking Section 42.26(a)(2), the tactic tends to deter or punish taxpayers who avail themselves of the remedy. And the disclosure, Catherine further suggests, also achieves the practical effect of mandatory sale-price disclosure despite the Legislature's longstanding refusal to require it.

Catherine's concerns have been echoed by several amici who have filed letter briefs in support of Catherine's petition.[43] Collectively they represent to us, without apparent dispute from TCAD, that TCAD's discovery tactics are common among appraisal districts statewide in resistance to Section 42.26(a)(3) claims. A related theme is that the present issues regarding discovery under Section 42.26(a)(3) have "widespread impact" and are "repeatedly litigated" below, yet have persistently eluded appellate review because Texas property taxpayers typically cannot afford to

---

[43] Amici include Crow Holdings Capital Partners, L.L.C.; Greystar Real Estate Partners, LLC; Mid America Apartments; the Texas Apartment Association; the Texas Association of Manufacturers; the Texas Building Owners and Managers Association; the Texas Public Policy Foundation; and Texas Self Storage Association, Inc.

carry the fight to that level.[44]  If that is so, this opinion should provide some needed clarification as to the respective rights of Texas property taxpayers and local appraisal districts who serve them.

We conditionally grant Catherine's petition for writ of mandamus.  We order that the district court withdraw its orders compelling production of the Prudential financing appraisal and overruling Catherine's objections to the relevance of the underlying request, sustain Catherine's objections, and undertake other proceedings consistent with this opinion.  The writ will issue only in the unlikely event it does not comply.

_____
Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Bourland

Filed:   June 20, 2018

---

[44]  In this regard, it is perhaps ironic that TCAD in its filings has repeatedly characterized Catherine's property as "luxury" apartments, as if such labels (or related ability to afford the litigation) should be a legitimate basis for treating a party less favorably under the law.