**Petition for Writ of Mandamus Granted and Opinion filed October 13, 2020.**



In The

# Fourteenth Court of Appeals

---

**NO. 14-20-00541-CV**

---

**IN RE APTWT, LLC, Relator**

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**215th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2019-70068**

---

## OPINION

On August 3, 2020, relator APTWT, LLC filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code § 22.221; *see also* Tex. R. App. P. 52. In the petition, relator asks this court to compel the Honorable Elaine H. Palmer, presiding judge of the 215th District Court of Harris County, to vacate her July 24, 2020 order compelling relator to produce documents related to its purchase of the Weston Oaks Apartments. Relator argues that much, if not all of the information

contained in these documents is not relevant to its action for unequal appraisal of its Weston Oaks Apartments under Tax Code section 42.26(a)(3) because that statute does not require consideration of the market value of the subject property. Because not all the information contained in these documents is relevant to the selection of comparable properties and making appropriate adjustments, the trial court's discovery order is overbroad. Tex. Tax Code 42.26(a)(3). We therefore conclude that relator is entitled to the requested relief.

## FACTUAL AND PROCEDURAL BACKGROUND

Relator owns an apartment complex known as the Weston Oaks Apartments in Harris County, Texas. Pursuant to Tax Code 42.26(a)(3), relator filed suit against the Harris County Appraisal District ("HCAD"), alleging that HCAD's 2019 appraisal of the Weston Oaks Apartments was unequal because it exceeds the median appraised value of a reasonable number of comparable properties appropriately adjusted. *See id*. After HCAD filed a motion to compel the production of documents which relator had objected to, the trial court signed an order that relator produce all appraisals, sales documents, and closing statements arising out of relator's purchase of the Weston Oaks Apartments ("Apartment Purchase Documents").

## MANDAMUS STANDARD

To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that relator has no adequate remedy at law, such as an appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam). A trial court clearly abuses its discretion if it reaches a

2

decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). "The relator must establish that the trial court could reasonably have reached only one decision." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). "Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable." *Id*.

While the scope of discovery is generally within the trial court's discretion, the trial court must impose reasonable discovery limits. *In re Graco Children's Prods., Inc.*, 210 S.W.3d 598, 600 (Tex. 2006) (orig. proceeding) (per curiam). Discovery requests must be reasonably tailored to include only matters relevant to the case. *See In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding) (per curiam).

"A discovery order that compels production beyond the rules of procedure is an abuse of discretion for which mandamus is the proper remedy." *In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 223 (Tex. 2016) (orig. proceeding). "Our procedural rules define the general scope of discovery as any unprivileged information that is relevant to the subject of the action, even if it would be inadmissible at trial, as long as the information sought is 'reasonably calculated to lead to the discovery of admissible evidence.'" *Id*. (generally quoting Tex. R. Civ. P. 192.3). "What is 'relevant to the subject matter' is to be broadly construed." *Id*. These liberal bounds, however, have limits, and "discovery requests must not be overbroad." *Id*. "A request is not overbroad 'so long as it is 'reasonably tailored to include only matters relevant to the case.'" *Id*. (quoting *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995)

3

(orig. proceeding) (per curiam)). "An order that compels overbroad discovery is an abuse of discretion for which mandamus is the appropriate remedy." *In re Sun Coast Res., Inc.*, 562 S.W.3d 138, 146 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding). We evaluate relevancy of discovery on a case-by-case basis by considering, among other things, the claims as pleaded. *Id*. In many instances, the Texas Supreme Court has granted mandamus relief to remedy overly broad discovery. *In re AIU Ins. Co*., 148 S.W.3d 109, 117 (Tex. 2004) (orig. proceeding) (listing decisions).

When a discovery order compels production of patently irrelevant or duplicative documents, there is no adequate remedy by appeal because the order imposes a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party. *In re CSX Corp*., 124 S.W.3d 149, 153 (Tex. 2003) (orig. proceeding) (per curiam). Information is "patently irrelevant" when reasonable minds would not differ that it has no tendency to prove or disprove any issue involved in the subject matter of the suit and the information's irrelevancy is apparent from the face of the record. *In re Sun Coast Res., Inc.*, 562 S.W.3d at 146.

### ANALYSIS

To determine the relevancy of the Apartment Purchase Documents, we first must examine the text of the statute under which relator brought its unequal appraisal action. Section 42.26(a)(3) of the Tax Code, entitled "Remedy for Unequal Appraisal," provides: "(a) The district court shall grant relief on the ground that a property is appraised unequally if: . . . (3) the appraised value of the property exceeds the median appraised value of a reasonable number of comparable properties appropriately adjusted." Tex. Tax Code § 42.26(a)(3). "The selection of comparable properties and

4

the application of appropriate adjustments for the determination of an appraised value of property by any person under Section 41.43(b)(3) or 42.26(a)(3) must be based on the application of generally accepted appraisal methods and techniques. Adjustments must be based on recognized methods and techniques that are necessary to produce a credible opinion." Tex. Tax Code § 23.01(f).

The relief authorized by section 42.26(a)(3) does not hinge upon whether the subject property's appraisal is consistent with its market value. Rather, section 42.26(a)(3) assumes whatever "appraised value" has been assigned by the appraisal district, regardless how derived or whether correctly or incorrectly determined under that measure. *In re Catherine Tower, LLC*, 553 S.W.3d 679, 686 (Tex. App.—Austin 2018, orig. proceeding). "[T]he analysis prescribed by Section 42.26(a)(3) does not independently determine the market value of either the subject property or the comparison properties." *Id*. (citing our decision in *Harris Cty. Appraisal Dist. v. United Inv'rs Realty Trust*, 47 S.W.3d 648, 651–53 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)).

In *United Investors*, this court was asked to interpret the identically worded predecessor to section 42.26(a)(3)—former Tax Code section 42.26(d).[1] *See* 47 S.W.3d at 651–53. On appeal, HCAD's primary argument was that the valuation method used by United Investors and the trial court was unlawful because it did not take into account the market value of the subject property, Mason Park Centre, and that to establish inequality, section 42.26(d) should be interpreted as requiring comparisons of appraised values to actual market value. *Id*. at 650. This court rejected this argument, concluding:

---

[1] Act of June 1, 1997, 75th Leg., R.S., ch. 1039, § 42, 1997 Tex. Gen. Laws 3897, 3917 (amended 2003) (current version at Tex. Tax Code § 42.26(a)(3)).

> Unlike section 42.26(a), subsection (d) does not contain a requirement of independent appraisals of all or some of the property in the district. Tex. Tax Code Ann. § 42.26 (Vernon Supp. 2000). Consequently, the plain language of section 42.26(d) dispenses with the requirement of an independent appraisal. It requires only a comparison of the appraised value of the property at issue with "comparable properties appropriately adjusted." *Id*. at § 42.26(d). . . .
>
> In short, the plain language of the statute requires us to hold that subsection (d) allows a protest without proof of the market value of the comparable properties.

*Id*. at 653. This court further held that "[i]f a conflict exists between taxation at market value and equal and uniform taxation, equal and uniform taxation must prevail." *Id*. at 654.

In *Weingarten Realty Investors v. Harris County Appraisal District*, this court interpreted *United Investors* as rejecting HCAD's argument that an unequal appraisal action requires consideration of market value:

> In *United Investors Realty Trust*, this court noted that section 42.26(d) became law on January 1, 1998, enacted as part of the Taxpayer's Bill of Rights. *See id*. at 652. It was intended to facilitate tax remedies for property owners. *Id*. In using the methodology mandated by this new avenue for ad valorem tax relief, this court rejected any requirement of independent market-value appraisals of comparable properties, appraisal ratios, or a statistical sample of comparable properties. *See id*. at 653. *The proper application of section 42.26(d) does not mandate consideration of market value*. *Id*. at 654. . . . HCAD asserts that section 42.26(d) requires consideration of independent market value of comparable properties. This court rejected that argument in *United Investors Realty Trust*. *See id*. at 653. By statute, appraised value is market value. *See* Tex. Tax Code § 23.01(a). Furthermore, if a conflict exists between taxation at market value and equal and uniform taxation, equal and uniform taxation must prevail.

6

93 S.W.3d 280, 287 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (emphasis added). Thus, this court has clearly held that evidence of the market value of the subject property or the comparable properties is not required for an unequal appraisal action under section 42.26(d)—the identically worded predecessor to section 42.26(a)(3).

Our decision in *United Investors* was followed by the First Court of Appeals. *See Harris County Appraisal Dist. v. Kempwood Plaza Ltd.*, 186 S.W.3d 155 (Tex. App.—Houston [1st Dist.] 2006, no pet.). There, HCAD argued that the property owner's expert should be excluded because the expert had no idea of the market value of the owner's property (Kempwood) or of the compared properties. *Id*. at 162. The First Court of Appeals rejected this argument, citing *United Investors*'s holding that "it is unfair, and constitutionally prohibited, to require one taxpayer to pay a tax based on market values if other taxpayers are paying a rate that is lower than the market value of their properties. . . . If a conflict exists between taxation at market value and equal and uniform taxation, equal and uniform taxation must prevail." *Id*. The First Court also noted that "the former subsection 42.26(d) of the Texas Tax Code required only an analysis between the appraised value of the property and the median appraised value of a reasonable number of comparable properties appropriately adjusted." *Id*.

If, as this court and the First Court have held, proof of market value is not required and market value does not prevail over uniform taxation in a property owner's unequal appraisal action under section 42.26(a)(3), then it logically follows that evidence of market value of the subject property is not necessarily relevant in such an action.

The mandamus relief sought by relator is similar to the relief granted in *In re Catherine Tower, LLC*, in which Catherine Tower, LLC ("Catherine Tower") obtained a loan from Prudential Insurance Company to acquire the property that was the subject

7

of the appraisal by the Travis Central Appraisal District ("TCAD"). *Catherine Tower*, 553 S.W.3d at 682. The trial court ordered Catherine Tower to produce "[a]ny appraisals, valuations or estimates of value performed in connection with the loan by [Prudential] to Catherine Tower." *Id*. The Third Court of Appeals appropriately relied on our decision in *United Investors* to hold that "Section 42.26(a)(3) does not independently determine the market value of either the subject property or the comparison properties." *Id.* at 686. Accordingly, the Third Court rejected TCAD's premise that a dispute about a property's tax appraisal value in an action under section 42.26(a)(3) places the property's market value (in the sense of what a willing buyer would pay a willing seller) at issue and thereby permits broad discovery of market-value-related information. *Id*. at 685. The Third Court held that if the information in the Prudential financing appraisal could have any potential relevance to Catherine Tower's section 42.26(a)(3) claim, it could only be in regard to the independent analysis required under that provision, identifying "comparable properties" and making "appropriate adjustments." *Id*. at 687 (citing Tex. Tax Code § 42.26(a)(3)).

Acknowledging the potential relevance of the financing appraisal to adjustments, Catherine Tower argued that TCAD was at most entitled to production of limited portions of the financing appraisal revealing the properties deemed comparable by the third-party appraiser and the factors this appraiser used in making adjustments to those properties. 553 S.W.3d at 687. Catherine Tower produced twenty-nine pages of redacted excerpts from the financing appraisal in which it purported to disclose that information. *Id*. But TCAD insisted that it was entitled to the entirety of the financing appraisal, save only an agreed-upon redaction of the sales price Catherine Tower paid for its property. *Id*. The Third Court rejected TCAD's argument, stating:

> TCAD's arguments reveal its request to be, at best, vastly overbroad, a mere "fishing expedition." "A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information." *In re CSX Corp.*, 124 S.W.3d at 153 (citing *In re American Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding) (per curiam)). If TCAD perceives in good faith that Catherine may possess specific information not already produced that is relevant to the selection of comparable properties and the application of appropriate adjustments to those properties under Section 42.26(a)(3), then it should formulate requests that seek that specific information (subject, of course, to Catherine's right to raise further objections at that juncture regarding scope, or assertions of privilege). But the present request, to the effect of "hand over your entire financing appraisal," is "narrowly tailored" only if one credits TCAD's fallacious syllogism that an appraisal dispute under Section 42.26(a)(3) means that market value is at issue, exposing the taxpayer to intrusive discovery of "market data."

*Id.* at 688. Accordingly, the Third Court ordered the trial court to withdraw its orders compelling production of the Prudential financing appraisal. *Id.* at 689.

HCAD argues that we should not follow *Catherine Tower* because it is contrary to the decision of the First Court of Appeals in *In re MHCB (USA) Leasing & Finance Corp.*, which held, in an action for unequal taxation under section 42.26(a)(3), that requests for information regarding the market value of owner's property are reasonably calculated to lead to the discovery of admissible evidence for use in comparing properties and evaluating adjustments and are therefore not beyond the scope of discovery. No. 01-06-00075-CV, 2006 WL 1098922, at *2–4 (Tex. App.—Houston [1st Dist.] Apr. 27, 2006, orig. proceeding) (mem. op.).

The First Court's apparent holding—that all information regarding the market value of the subject property is relevant—is inconsistent with *Catherine Tower*'s and

this court's holding in *United Investors Realty* that the "[t]he analysis prescribed by Section 42.26(a)(3) does not independently determine the market value of either the subject property or the comparison properties." *Catherine Tower*, 553 S.W.3d at 685–86 (citing *United Inv'rs Realty Trust*, 47 S.W.3d at 651–53 (reaching that conclusion under identically worded predecessor statute)). Although some information in the Apartment Purchase Documents regarding the market value of the Weston Oak Apartments, such as the property's quality, size, age, and depreciation, may be relevant to selecting and making adjustments to comparable properties, we do not see how the price that relator paid for the Weston Oaks Apartments (stated in the sales and the closing statements) or the market value of the Apartments (stated in the appraisal) are relevant for this purpose.

We therefore disagree with the overly broad holding of *In re MHCB (USA) Leasing & Finance Corp.*, but rather agree with the above-discussed holdings in *Catherine Tower*, which are consistent with this court's decisions in *United Investors* and *Weingarten*.[2] Accordingly, in an unequal appraisal action under section 42.26(a)(3), discovery related to market value should be narrowly tailored to information that is

---

[2] HCAD notes: "[N]o trial court 'has a right to decide cases contrary to an opinion of the appellate court for its jurisdiction on the same question.'" *Rice v. Rice*, 533 S.W.3d 58, 61–62 (Tex. App.— Houston [14th Dist.] 2017, no pet.). HCAD therefore argues that the trial court did not abuse its discretion because it was bound to follow the First Court of Appeals's decision in *In re MHCB*. We disagree for two reasons. First, the trial court had discretion to instead follow this court's decision in *United Investors Realty*. Second, HCAD's argument leads to an absurd result that this court has not accepted, namely, that this court would be precluded from ever deciding whether an opinion of the First Court was correctly decided or should be followed, as this court has done several times. *See e.g.*, *City of Houston v. Rodriguez*, 369 S.W.3d 262, 267 n.4 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *Holt v. State*, No. 14-99-01156-CR, 2000 WL 1876794, at *1 (Tex. App.—Houston [14th Dist.] Dec. 28, 2000, no pet.) (mem. op., not designated for publication).

relevant to the selection of comparable properties and the application of appropriate adjustments to those properties.

We apply this holding to the trial court's order as follows. Here, the trial court ordered relator to produce all appraisals, sales documents, and closing statements arising out of relator's purchase of the Weston Oaks Apartments. The discovery that HCAD requested and the trial court ordered is overbroad because it is not narrowly tailored to documents or information relevant to the selection of comparable properties and making appropriate adjustments, but includes irrelevant information such as the price that relator paid for the Apartments (stated in sales documents and closing statements) and the value of the Apartments stated in the appraisal. In *Catherine Tower*, even TCAD recognized that it was not entitled to discovery of the purchase price, as it did not object to Catherine Tower's redaction of the price it paid for the subject property in the financing appraisal documents that Catherine Tower produced. 553 S.W.3d at 683. As did the Third Court in *Catherine Tower*, we recognize that HCAD may be entitled to limited portions of the appraisal of the subject property to the extent that the appraisal may reveal the properties deemed comparable by the third-party appraiser and the factors this appraiser used in making adjustments to those properties. *Id*. at 687. The trial court's overbroad discovery order is an abuse of discretion for which relator is entitled to mandamus relief. *See Catherine Tower*, 553 S.W.3d at 683–88; *see also In re Nat'l Lloyds Ins. Co*., 507 S.W.3d at 223; *In re Sun Coast Res., Inc*., 562 S.W.3d at 146.

11

## CONCLUSION

For the above reasons, we grant the requested relief and direct the respondent to vacate the July 24, 2020 order.

/s/    Charles A. Spain
Justice

Panel consists of Justices Spain, Hassan, and Poissant.

12